BUFFALO PARK LANE, INC., Plaintiff, *v.* THE CITY OF BUFFALO, JAMES W. HIGGINS, as Commissioner of Police, and GREGORY U. HARMON, as Corporation Counsel, Defendants.

RAYMOND L. KLINCK, Plaintiff, *v.* BUFFALO PARK LANE, INC., Defendant.

Supreme Court, Erie County, March 1, 1937.

208

*Shire & Jellinek* [*Edward L. Jellinek, Joseph Swart* and *Lynn D. Wallace* of counsel], for the Buffalo Park Lane, Inc.

*Gregory U. Harmon, Corporation Counsel* [*Andrew P. Ronan* of counsel], for the defendants, city of Buffalo, commissioner of police and corporation counsel.

*Donovan & Raichle* [*Frank G. Raichle* and *Emery S. Tucker* of counsel], for the plaintiff Klinck.

HARRIS, J. In the first above-entitled action the plaintiff seeks to restrain the defendants therein from enforcing by penalty suits and criminal process, certain provisions of the Zoning Ordinance of the City of Buffalo, which provisions the defendant city claims to be applicable to premises on the north side of Lancaster avenue in

the city of Buffalo, which premises are owned and used as a parking lot for guests by plaintiff in such first-entitled action and which provisions the plaintiff in such action claims are not applicable to the premises in question. For the purposes of convenience such first above-entitled action will be referred to hereinafter as the Zoning Ordinance case.

In the second above-entitled action the plaintiff Klinck seeks to restrain the use of such Lancaster avenue premises by Buffalo Park Lane, Inc., as such parking lot, on the ground that this use of such premises constitutes a private nuisance affecting and damaging the property interests of the plaintiff Klinck in and in reference to his home on Lancaster avenue, which premises are located across the street from the premises on Lancaster avenue above referred to as being owned by Buffalo Park Lane, Inc.

For the purposes of convenience, this Klinck action will be referred to hereinafter as the Nuisance case.

About the middle part of December, 1936, in an endeavor to prevent the legal department and the police department of the city of Buffalo from interfering with the use of its premises on Lancaster avenue, the Buffalo Park Lane, Inc., commenced the first above-entitled action and immediately applied for a temporary order restraining the officers of the city of Buffalo from interfering with the use of such premises. Such interference at that time had consisted of the service of summonses in criminal actions and the service of papers in suits for penalties for violation of the Zoning Ordinance, all of which were directed against the Buffalo Park Lane, Inc., and of inquiries made of the guests of Buffalo Park Lane, Inc.

At the suggestion of the learned justice in Special Term, made at the time there was presented to him application for such temporary restraining order, the parties to the first above-entitled action stipulated to an immediate trial in the Equity Part of this court. Upon such stipulation being made the parties in the Nuisance case who had also sought restraining orders against the Buffalo Park Lane, Inc., using its Lancaster avenue premises also stipulated to immediate trial of such action at the same time that the Zoning Ordinance case was tried. Here we have an illustration of the speed with which a case can be tried if the parties thereto desire to expedite the disposition of matters at issue.

The trial of the case began on the 23d day of December, 1936, and ended at the end of the year. Following the provisions of the Civil Practice Act (§ 439), the parties were allowed reasonable time to submit their proposed findings of fact and conclusions of

law with their memoranda of argument of the issues. The final set of findings and conclusions were received by the trial court February 20, 1937, and the issues may now be decided.

In view of the fact that the disposition of the Zoning Ordinance case in some respects at least will be decisive of the Nuisance case, the court will first discuss the Zoning Ordinance case and the disposition thereof.

The facts proven to the court in reference to such Zoning Ordinance case were briefly as follows: Buffalo Park Lane, Inc., conducts an apartment hotel (for both permanent and transient guests) in a building located on the west side of Delaware avenue, at the junction of Lafayette avenue and Gates circle. This structure represents a most substantial investment of money and contains apartments of the highest grade. In addition to the apartments in the structure there is conducted in connection with the apartment hotel business and in the same building, dining rooms, cafe and grill and a so-called cocktail lounge. The apartment hotel was constructed under permit from the then necessary authorities of the city of Buffalo, which permission was given on November 25, 1924. The buildings which comprise such apartment hotel stand on a tract of land which is irregular in shape and is approximately 270 feet deep and 170 feet in width at its widest point. Ever since the permission of the city to construct and the succeeding construction of the building the apartment hotel has been in active operation.

In 1933 the premises above described became the property of Buffalo Park Lane, Inc., and with the passing of prohibition in reference to alcoholic beverages there came the establishment in part of such premises of the cafe and cocktail lounge. As days of depression turned into days of at least better financial hope and as the new ownership of the apartment hotel became more successful, the business of this apartment hotel increased. The apartment hotel is, or at least its public rooms are located where stood a home that was formerly known as the Norton mansion and later known as the Morgan home. In the days of the occupancy of such home by the Norton family and later in the days of its occupancy by the Morgan family there was on the southern portion of the premises a wide driveway leading to the rear of the premises. This driveway was at that time in use for the residents in the mansion. Following the building of the apartment hotel, the owners of the apartment hotel continued to use such driveway as a means of ingress to and egress from the apartment hotel and its appurtenant parts and for the parking of automobiles of its guests.

Contiguous to and immediately south of the premises occupied as an apartment hotel by Buffalo Park Lane, Inc., and on what

was formerly the residence of the Rogers family, and including the remainder of Delaware avenue frontage to Lancaster avenue (which street is next south to Lafayette avenue and Gates circle) is a parcel of land approximately 240 feet on Lancaster avenue and 80 feet on Delaware avenue, on which parcel of land is located an apartment house containing some seventy small apartments and known as Gates Circle Apartments. The term " house " is used in contra-distinction from the term " hotel " to emphasize the fact that the apartments in the Gates circle premises are occupied by permanent tenants. In the Gates Circle Apartments are also located a beauty parlor and food supply place which cater to the tenants of the Gates Circle Apartments. Those residing in the Gates Circle Apartments are persons of good repute and of good standing. The permit to build the Gates Circle Apartments was issued by the proper city authorities on the 24th day of November, 1925, and thereupon construction proceeded to completion.

The premises on Lancaster avenue which belong to Buffalo Park Lane, Inc., and the use of which is at issue in these actions, are located on Lancaster avenue directly west of the premises occupied by the Gates Circle Apartments and are sixty feet front on Lancaster avenue and approximately 126 feet in depth and are contiguous on their north side to the south side of other premises of Buffalo Park Lane, Inc., and its driveway from Delaware avenue. Both Gates Circle Apartments and the apartment hotel of Buffalo Park Lane, Inc., were built to replace mansions formerly occupied by leading citizens, which mansions were given up as residences due to the change of methods of transportation and methods of living in the city. The present status of this neighborhood can be stated definitely to be, as it always has been, of the highest type.

The Zoning Ordinance of the City of Buffalo was passed by the city council and approved in December, 1925, and became effective on the 19th day of January, 1926. This Zoning Ordinance divided the city of Buffalo so that certain portions thereof were to be devoted to or restricted for certain uses, i. e., residence districts, apartment hotel districts, business districts, first, second and third industrial districts. Prior to the adoption of such Zoning Ordinance there had been no such division of districts in the city of Buffalo. The Zoning Ordinance is represented by certain written provisions and by a so-called basic map, which map is the record evidencing the division lines between the various use districts and showing the extent of such use districts. In preparing and approving such map as part of the ordinance, the city authorities divided the city block or square which is bounded by the west side of Delaware avenue, the north side of Lancaster avenue, the east side of Elm-

wood avenue (which is the street next west of Delaware avenue), the south side of Lafayette avenue and the southwest portion of Gates circle into two parts. One part was included in the apartment hotel use district and contained the premises now owned and occupied by Buffalo Park Lane, Inc., and the premises then owned and occupied by the Gates Circle Apartments and that portion of land on the north side of Lancaster avenue lying immediately west of the west line of the Gates Circle Apartments premises, which said portion of land was twenty feet front on Lancaster avenue and runs back northerly until it reaches the then western line of the apartment hotel premises. All of the remainder of the real property in the block bounded by Delaware avenue, Lancaster avenue, Elmwood avenue, Lafayette avenue and Gates circle was placed in the residence use district. The city block or square above described is approximately 2,200 feet in length on Lancaster avenue and 225 feet in width from Lancaster avenue to Lafayette avenue.

At the time of the enactment and putting in force of the Zoning Ordinance the twenty-foot tract last above mentioned was part of a parcel of land sixty feet in front on the north side of Lancaster avenue and running from Lancaster avenue north to the apartment hotel premises, which sixty-foot parcel was owned by John R. Oishei.

By establishing the apartment hotel use and the residence use districts in so far as the block of land bounded by Lancaster avenue, Elmwood avenue, Lafayette avenue, Gates circle and Delaware avenue were concerned, running such line twenty feet north of the Gates Circle Apartments, resulted in dividing the Oishei sixty-foot parcel so that the easterly twenty feet thereof was and now is in the apartment hotel use district and the westerly forty feet thereof was and now is in the residence use district. As a consequence of the establishment of such line dividing parts of the city block into residence and apartment house uses, there was left this twenty-foot piece which could be used either for residence or apartment hotel purposes (Zoning Ordinance, § 14) and the forty-foot picee which could be only used for residence purposes. This division of the city block made no provision for any growth of the apartment hotel or of the Gates Circle Apartments except the twenty-foot strip and it is apparent that such strip would be of no value for apartment hotel construction unless used in connection either with the Gates Circle Apartments or with the apartment hotel premises. The part of the city block designated for apartment hotel use is not contiguous to or near any other property designated for apartment hotel purposes.

At a time subsequent to the enactment of the Zoning Ordinance and about June, 1927, Mr. Oishei conveyed to the predecessor in title of the premises of the Buffalo Park Lane, Inc., the sixty-foot tract above mentioned. Apparently this was for the purpose of constructing a garage by the apartment hotel owners on such sixty-foot lot, but the required permission not having been obtained such garage was not constructed and by foreclosure proceedings the sixty-foot parcel again in December, 1933, became the property of Mr. Oishei.

By contract dated October 28, 1936, and consequent deed dated November 23, 1936, recorded December 1, 1936, Mr. Oishei conveyed such sixty-foot parcel to Buffalo Park Lane, Inc., a party to the above-entitled action. Prior to the conveyance of such premises the business of the apartment hotel and its cocktail lounge had so increased and due to traffic conditions parking space at the curbs in this vicinity became so scarce that those persons who had business with Buffalo Park Lane, Inc., and could not or did not care to park their automobiles at the curbs in the street or did not desire to seek a public garage were allowed by Buffalo Park Lane, Inc., to park in the driveway lying between the apartment hotel premises and Gates Circle Apartments. As business grew, more parking space was needed for those transacting business with Buffalo Park Lane, Inc., and for that purpose the title of the sixty-foot parcel was taken by Buffalo Park Lane, Inc., from Mr. Oishei by contract and deed as above stated. Immediately on the making of the land contract, the Buffalo Park Lane, Inc., began to use the sixty-foot parcel on Lancaster avenue for the parking of cars of its customers. On complaint to such use being made by the neighbors, the city authorities (both in the law department and in the police department) took steps to prevent such use of the sixty-foot parcel and for that purpose brought the criminal proceedings and the penalty suits above mentioned. The police department of the city of Buffalo also established a practice of visiting the premises of Buffalo Park Lane, Inc., and interrogating persons arriving in automobiles as to their names and addresses. As a consequence the business of the Buffalo Park Lane, Inc., has been seriously disturbed. This caused the first above-entitled suit to be brought and disposition of such action is dependent upon the decision of the question as to whether the provisions of the Zoning Ordinance which divide the city block between Lancaster avenue, Elmwood avenue, Lafayette avenue, Gates circle and Delaware avenue as above described into the residence and apartment hotel uses is a division that is valid or invalid.

As cities have developed throughout this and other countries there has been adopted and there has grown up a practice of zoning such cities into use districts. Such zoning is constitutional providing it is not arbitrary or unreasonable. (*Nectow* v. *Cambridge,* 277 U. S. 183; *Euclid* v. *Ambler Co.,* 272 id. 365; *Matter of Eaton* v. *Sweeny,* 257 N. Y. 176.) In these cases at bar it is conceded by all parties that in general the Zoning Ordinance of the City of Buffalo is a legal fulfillment of the rights of the city to adopt such Zoning Ordinance, but Buffalo Park Lane, Inc., one of the parties to such actions, contends that the specific division of the above-described city block was not necessary in adopting the ordinance and is an unreasonable division of the block. With this viewpoint, so far as the sixty-foot parcel above described is concerned, the court agrees for the following reasons: In the first place, as above indicated, in making such division of the block and the consequent division of the sixty-foot parcel into two use districts the enacting authorities paid no attention to the possibility of the probable growth of the two apartment buildings on Delaware avenue between Lancaster and Lafayette avenues except in so far as the twenty-foot piece of the sixty-foot parcel is concerned. Certainly this twenty-foot piece could not have been the location of a new apartment house so it must have been the intention, if the matter were at all considered, of the city authorities that such twenty-foot strip was left to be added to either the Gates Circle Apartments tract or the apartment hotel tract in the event of future growth or necessity of either one. By making such division, the owner of the sixty-foot parcel, in regard to such twenty-foot piece was concerned, was left in so far as the apartment hotel use is involved to a choice of only two customers or to a further choice of using the twenty-foot piece in connection with the forty feet remaining purely for residence purposes and thus placed in a position of being compelled to sell his twenty-foot piece at a price that would not be as advantageous if he were able to sell the sixty-foot parcel for apartment hotel purposes. It must be conceded that if this were necessary for the general good, then the parcel could have been divided in that manner. But the court is unable to see where the general good was served by such division. The sixty-foot parcel was immediately contiguous to apartment hotel property and to this court it appears that it would have been more reasonable for the zoning authorities to permit such sixty-foot parcel to remain in the apartment hotel district instead of putting part into the apartment hotel district and part into the apartment residence district. By such a division which would leave the sixty-foot parcel in the apartment hotel district, such sixty-foot parcel would be ample in size for an

apartment house or could be advantageously handled by the owner in a sale to one of the two adjoining apartment hotels and this would also give an opportunity for enlargement of necessary facilities by either the Gates Circle Apartments or by the apartment hotel. (*Matter of Eaton* v. *Sweeny, supra; Taylor* v. *Haverford Township*, 299 Penn. St. 402; 149 A. 639; *Matter of Gilfillan's Permit*, 291 Penn. St. 358; 140 A. 136.)

The court has, therefore, reached the conclusion that the division of the sixty-foot parcel into two use districts was arbitrary and unreasonable and, therefore, invalid and that the apartment hotel district should have included the sixty-foot parcel. In view of this the court is of the opinion that the Zoning Ordinance is not enforcible as against the use of such sixty-foot parcel for apartment hotel purposes.

Two other questions exist in reference to the right of the Buffalo Park Lane, Inc., to use the sixty-foot parcel for the purposes under discussion, *i. e.*, for parking automobiles belonging to its guests. One: Is such use proper in an apartment hotel district? Examination of the Zoning Ordinance reveals nothing that forbids the use of vacant ground belonging to or adjoining a piece of land for automobile parking purposes. In addition, it is common knowledge that throughout the city of Buffalo in the districts inhabited by mechanics and in the districts inhabited by capitalists, parking on the premises is of common practice. The man who has his own humble home quite often has on his driveway and in his lot his own automobile and that of his friends whom he may be entertaining. This is true also of those who inhabit the more pretentious residences. Street conditions in this city and other cities are such that parking along the curb is becoming more and more restricted. It is true that there are public garages but these are not always conveniently located and sometimes the owners of automobiles cannot or do not care to pay garage charges. From early days hotels provided hitching posts and stables for the conveyances of their guests and in more recent years it has become the practice in large cities for places of public entertainment or in which the public gathers in large numbers to provide automobile parking space on adjoining lands. Of the latter, there are dozens of instances in the city of Buffalo and many within short distances of the premises in question. The court has no hesitancy in saying that in its opinion the provision and use by apartment hotels of parking space for guests is a necessary incident of the business of an apartment hotel and in relation to the Zoning Ordinance an accessory use of the premises of the apartment hotel. (Zoning Ordinance, § 15, subd. A.) So this court holds that in so far as its own premises

are concerned, Buffalo Park Lane, Inc., has a right to provide for its guests upon such premises parking facilities for their automobiles.

The other question that is involved in deciding whether the sixty-foot parcel should be used for parking purposes by Buffalo Park Lane, Inc., is whether it is part of the same " lot " as that term is used in the Zoning Ordinance (§ 32, subd. 6). Such section is as follows: "A ' lot ' is a parcel of land for occupancy by a building or use and the accessory buildings or uses customarily incident to it, including such open spaces * * * as are arranged and designed to be used in connection with such building. A lot may be or may not be the land shown as a lot on a duly recorded plot." On this question, in view of the fact that the sixty-foot parcel is contiguous to the main premises of Buffalo Park Lane, Inc., the court finds that such sixty-foot piece is now a part of the " lot " as defined in such subdivision 6 of section 32 of the Zoning Ordinance. Therefore, the court concludes that Buffalo Park Lane, Inc., in so far as the Zoning Ordinance case is concerned, is entitled to a decree to the effect that the sixty-foot parcel is available for and may be used for apartment hotel purposes and in particular for the parking of automobiles of guests of the Buffalo Park Lane, Inc., and that the plaintiff in the Zoning Ordinance case is also entitled to the dismissal of the counterclaim of the city in such action. This cannot and does not mean that the police and other authorities of the city of Buffalo are prevented from enforcing the criminal laws of the State and ordinances other than the Zoning Ordinance of the city of Buffalo in relation to the use of such sixty-foot lot or of the other premises of the Buffalo Park Lane, Inc.

The court now comes to the consideration of the so-called Nuisance case. This is what is known as an action in private nuisance and is brought by and on behalf of the individual plaintiff, Raymond L. Klinck, and solely in regard to his own property. The law which grants such a right of action is well expressed in *Cranford* v. *Tyrrell* (128 N. Y. 341), from which quotation is made as follows:

" The rule of law requires of him who complains of his neighbor's use of his property, and seeks for redress and to restrain him from such use, that he should show that a substantive injury to property is committed. * * *

" If the business complained of is a lawful one, the legal question presented in a civil action for private damage is whether the business is reasonably conducted, and whether, as conducted, it is one which is obnoxious and hurtful to adjoining property. * * * One who uses his property lawfully and reasonably, in a general legal sense, can do injury to nobody. In the full enjoyment of his legal rights

in and to his property, the law will not suffer a man to be restrained; *but his use of the property must be always such as in no manner to invade the legal rights of his neighbor.* The rights of each to the enjoyment and use of their several properties should, in legal contemplation, always be equal. If the balance is destroyed by the act of one, the law gives a remedy in damages, or equity will restrain. If the use of a property is one which renders a neighbor's occupation and enjoyment physically uncomfortable, or which may be hurtful to the health, as where trades are conducted which are offensive by reason of odors, noises, or other injurious or annoying features, a private nuisance is deemed to be established, against which the protection of a court of equity power may be invoked." (Italics by this court.)   (Also see *Close* v. *Witbeck,* 126 App. Div. 544.)

The plaintiff Klinck is entitled to succeed if he has shown that although, as the court finds, the use of the lot complained of is lawful, he has been injured because such use has been unreasonable and obnoxious and hurtful to his own property. If the harm is one common to the entire neighborhood and does not create some specific injury to the property of an individual owner, it well may be a public nuisance but there cannot be a cause of action on private nuisance. The proof before me as to whether the cause of action on private nuisance was established by plaintiff Klinck was on behalf of such plaintiff Klinck that since the beginning of the use of the sixty-foot parcel in question as a parking lot for automobiles of the guests of Buffalo Park Lane, Inc., he was disturbed in the use of his home by loud and disorderly talking on such lot at different hours of the night; that a floodlight erected on a tree on such lot steadily made a glare onto and into his home; that cars on such lot were handled in such a manner as to create loud and disturbing noises in the mechanical parts thereof during the night and until the early hours of the morning; that at various hours of the night cars were driven out of such lot onto Lancaster avenue which was used as a turning point and then brought back on the lot and that Lancaster avenue was used as a means of ingress to and egress from such sixty-foot parcel with resulting disturbance by noise and headlights of the rest and sleep of those in his home and that the appearance of the lot was such that it depreciated the value of the property in the neighborhood. In reference to the appearance of the lot, the manager of Buffalo Park Lane, Inc., stated on the trial that he had planned to erect a barricade of shrubbery along the Lancaster avenue front of the sixty-foot lot. In reference to the claims of the plaintiff Klinck and the witnesses sworn on his behalf

in regard to disorderly conduct and other noises and disturbances on the lot and in its facilities growing out of the use of parking on the lot, the Buffalo Park Lane, Inc., swore witnesses who testified that although in a position, as they claimed, to notice such disorderly conduct and noises, if they existed, to their knowledge there was no such noise or disturbance. Among those sworn on these questions on behalf of the plaintiff were neighbors residing in other homes in the vicinity and tenants of Gates Circle Apartments and those sworn on behalf of Buffalo Park Lane, Inc., were the occupants of that portion of the apartment hotel nearest to the sixty-foot parcel. Practically every witness sworn on these issues was either personally well known to the court or known by reputation to the court and the court has no hesitancy in saying that he would take as the truth the word of any one of these witnesses on an issue of fact. Therefore, it is necessary to seek the reason for the discrepancy of the testimony of these two groups of witnesses and the court feels that that discrepancy is one coming from the personal disposition of the witnesses, the means and method of observation of the witnesses and his or her surroundings at the time of the alleged disturbances. From this testimony and with these views of the witnesses in mind, the court has come to the conclusion that there has been such a use of the lot as contended by plaintiff Klinck as to create a private nuisance which affects the use and enjoyment by said Klinck of his home and premises. In reaching this conclusion the court feels that the witnesses sworn on behalf of the plaintiff Klinck are more apt, due to the location of their homes and their type of abiding places (in so far as walls, draperies, windows and distances are concerned), to have had an opportunity to observe and notice disturbing factors than were the witnesses sworn on behalf of the Buffalo Park Lane, Inc., on this issue.

In seeking relief from the effects of the private nuisance, the plaintiff Klinck made no proof as to money damages and, therefore, he can be granted only injunctive relief. In view of all of the circumstances, this court is of the opinion that at present to grant an injunction restraining the use of the sixty-foot parcel as a parking lot would be too drastic a remedy because the plaintiff Klinck can be protected in his property interests and the enjoyment of his home by restrictions placed by the court on the use of such sixty-foot parcel by Buffalo Park Lane, Inc. The plaintiff Klinck may have judgment to the effect that he has established a cause of action in private nuisance against Buffalo Park Lane, Inc., and that the use by Buffalo Park Lane, Inc., of such sixty-foot parcel is to be subject

to the following restrictions: Such parcel may be used as parking space by Buffalo Park Lane, Inc., for the use of its guests on condition that no guests of the Buffalo Park Lane, Inc., shall be permitted to go upon such parking lot for any purpose, the parking and removal of the automobiles of guests to be by employees of the Buffalo Park Lane, Inc., with only the necessary mechanical noise of ingress to and egress from such lot; the method of lighting the sixty-foot parcel by the floodlight on the tree is to be changed by removing such floodlight and by the use of lights that will not shine except upon the lot at a height of not more than three feet from the surface of such lot; no horns or shouting are to be used in the handling of automobiles on such sixty-foot parcel; ingress to and egress from such lot is to be by way of the driveway from Delaware avenue and no cars are to be moved from such lot onto Lancaster avenue for any purpose; Buffalo Park Lane, Inc., is to place on the Lancaster avenue front of the sixty-foot parcel shrubbery or some other method of preventing an unsightly view of such lot from plaintiff Klinck's home. In placing cars on the lot and removing them from the same care is to be taken that headlights of the automobiles do not shine on the home of the plaintiff Klinck. With these restrictions in use the court is of the present opinion that it should not require further restraint of the use of such lot.

In view of the nature of the two actions and in view of the parties thereto, the decision of the court in such actions is necessarily confined to the issues therein, *i. e.*, the application of the Zoning Ordinance to the sixty-foot lot and the claim of private nuisance on behalf of the individual plaintiff Klinck.

The decision in each one of these actions and the judgment to be entered thereon may provide that either party to such action may apply from time to time at the foot of such judgment therein for any further relief that the court may find necessary and suitable in the premises.