MACK *v.* CRANDELL, ET AL.

[No. 414, September Term, 1965.]

*Decided October 19, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*J. Francis Ford,* with whom was *Joseph H. A. Rogan* on the brief, for appellant.

*Marvin I. Singer,* with whom was *John H. Hessey, IV* on the brief, for appellees.

OPPENHEIMER, J., delivered the opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 200, *infra.*

The width of a pen-stroke in the preparation of a comprehensive zoning map by the Baltimore County Council in 1959 resulted in an admitted error in the zoning of the appellant's property. Prior to the adoption of the map for the Thirteenth District, the property had been zoned for residential use, one or two-family houses (the present R-6 zoning classification). At the time of the hearings on the adoption of the comprehensive map, the appellant, Miss Mack, sought commercial zoning (B-L, business local) for her property, which consists of about an acre and a half fronting some 209 feet on Maiden Choice Lane, in the Arbutus area. The Planning Staff, the Planning Board and the County Council considered her request as a specific issue. The Board recommended R-A zoning (residential apartments, gross density 18 units per acre, net density 16 units per acre) to serve as a buffer or transition zone between the B-L zoning to the west and the R-6 zoning to the east. The Council adopted this recommendation. However, because the District Zoning Map was based on maps at a scale of 1000 feet to the inch, it was difficult to draw zoning delineations that were precisely accurate, and, in drawing the map, the width of the pen-stroke resulted in deviations between the boundaries of the Mack lot and the R-A zoning area intended by the Coun-

cil to be applicable to that lot. Approximately 85% of the Mack lot was zoned R-A, as the Council intended, but, because of the drafting error, 12 feet of the frontage of the property were zoned B-L and 20 feet on the other side of the lot were zoned R-6. The zoning of the two strips was an unintentional overlap of contiguous areas so zoned.

In 1961, the appellant again sought to obtain B-L classification of her property. Her application was denied by the Zoning Commissioner and no appeal was taken. Miss Mack has never, since the 1959 zoning, attempted to have the 12 and 20 foot strips of her property zoned R-A, as most of her lot is zoned.

In 1963, the appellant filed an application for a reclassification of all of her property to B-L, with a special exception for a gasoline service station. The Zoning Commissioner of Baltimore County denied the reclassification and the special exception. The County Board of Appeals reversed the decision of the Zoning Commissioner and granted the rezoning classification and special exception. The Board found that there was obviously an error in the original zoning and that there had been many subsequent changes in the neighborhood. On appeal to the Circuit Court of Baltimore County, Judge Menchine, in an incisive and well considered opinion, reversed the Board's order and denied the requested reclassification and special exception.

Judge Menchine found that there was no evidence to support the Board's statement that there had been changes in the neighborhood. Counsel for the appellant conceded at the hearing below, and in the argument before us, that the Board's finding was not supported in the record. We agree. The sole issue, therefore, is the effect of the admitted original mistake.

At the time of the 1959 zoning, the Mack property was used as a single family residence and was bounded on the north and east by R-6 zoning; the area so zoned was improved by single family homes. The property immediately adjacent to the west was zoned B-L and was improved by a building and loan association office building. Also to the west, on the opposite side of Maiden Choice Lane, not immediately in front of the Mack lot, were a gasoline station and, further west, a shopping center. To the south, there was a residential neighborhood with an

elementary school three blocks away. There has been no change in these conditions since the 1959 zoning. The residential property next door to the Mack property has recently been sold as a residence and a new home has been built on Maiden Choice Lane close to the Mack lot.

There is no claim that under the present zoning the appellant has been deprived of all beneficial use of her property. Miss Mack has lived in her house as a single family residence for over 40 years. She has tried to sell her land for residential or commercial use but not for apartments. She does not wish to build apartments because of her age and lack of capital resources. The uncontradicted testimony is that there is no physical reason which would prevent the development of at least so much of the tract as is zoned R-A and B-L for apartment use and that the lot has a substantial value for that use.

The appellant contends that, because of the admitted error in the zoning of the two strips of the property as B-L and R-6, the Board acted within its authority in reclassifying all the tract as B-L. But, as Judge Menchine points out in his opinion, an error of this particular nature in the original zoning does not, of itself, justify a commercial reclassification. The appellant did not request a correction of the error by a reclassification of the two strips to R-A, as most of the tract is zoned and as the Council obviously intended all of it should be zoned, but seeks to make the technical mistake the basis for rezoning all of the tract to a use which the Council, in its comprehensive zoning, had, after consideration, rejected. The Board's action is an attempted piecemeal rezoning of a comprehensive zoning map, not to correct an error, but to rezone the property for a use inconsistent with the original comprehensive zoning. The proposed use would be in conflict with the original zoning, even had that zoning properly reflected in its drafting the clear legislative intent.

On the undisputed facts, the Board's action in granting a reclassification of a tract of property and a special exception in conflict with the comprehensive zoning, even if that zoning be regarded from the point of view of what the Council intended instead of in the light of the lines the map contained, was arbitrary, capricious and unreasonable. There being no evidence of

a change in conditions, that issue was not fairly debatable. The uncontradicted evidence as to the mistake in the original zoning might well have supported an order to correct that mistake, if application to that effect had been made, by zoning the entire tract R-A, as the Council intended. But the rule that a piecemeal change from the original zoning can be sustained on strong evidence of an original mistake was never intended, and has not been applied, to uphold a reclassification for a use which the original zoning had never envisaged.

The cases in which this Court has sustained an administrative order correcting a mistake clearly shown in the original zoning have been limited to the rectification of the mistake. In *Overton v. Board of County Comm'rs,* 225 Md. 212, 170 A. 2d 172 (1961), the correction sustained was a reclassification from Rural-Residential to Multiple Family, Low-Density Residential. At the hearing before the original comprehensive zoning, the property owner had requested, and had been denied, commercial zoning for a shopping center. There was strong evidence, however, of an original mistake in failure to consider the type of residential development which should have been recommended for the property. The owner's subsequent request for reclassification was addressed to the correction of that original error; the reclassification was for a more restricted use than that originally rejected. The Court said, at 225 Md. 219: "The Council may have determined * * * that the reclassification would be more in harmony with the comprehensive zoning plan than the original classification." Here, the reclassification granted by the Board was in conflict with the undisputed legislative intent that the property be zoned for residential apartments, to serve as a buffer or transition zone. In *Rohde v. County Bd. of Appeals,* 234 Md. 259, 199 A. 2d 216 (1964), the Board's order upheld by the Circuit Court for Baltimore County and by this Court reclassified the tract involved from R-6, Two-Family Residence, to R-A, Residence Apartment, with a special exception for two high-rise apartment buildings. The Court found there was strong evidence of a mistake in the original zoning in not anticipating the trend towards apartments in the area. In *Dill v. Jobar Corp.,* 242 Md. 16, 217 A. 2d 564 (1966), we held that there was a sound basis for the

determination of original error made by the Zoning Board and affirmed by the Circuit Court in not zoning the tract involved for Manufacturing-Restricted. The property was reclassified as Business Local, which, as in *Overton,* was a more restricted use than that originally rejected in error. In *Jobar,* Judge Hammond (now Chief Judge) said for the Court, at 242 Md. 23:

> "Even though the existing zoning does not result in confiscation and thus *require* rezoning, original error may *permit* the agency to which the controlling legislative body has entrusted individual rezoning *properly* to change a classification, *Overton v. Co. Commissioners,* 225 Md. 212, if it does so on evidence before it which is substantial enough to permit reasoning minds reasonably to conclude that the strong presumption of the correctness of the original zoning or comprehensive rezoning has been overcome. *Miller v. Abrahams,* 239 Md. 263; *Pahl v. County Bd. of Appeals,* 237 Md. 294, 297; *Shadynook Imp. Assn. v. Molloy,* 232 Md. 265, 269-70, and cases cited." (Emphasis on "properly" added).

The New York cases cited by the appellant, *Buffalo Park Lane, Inc. v. City of Buffalo,* 162 Misc. 207, 294 N. Y. Supp. 413 (Sup. Ct. 1937), and *Hecht-Dann Const. Co. v. Burden,* 124 Misc. 632, 208 N. Y. Supp. 299 (Sup. Ct. 1924), involve different factual situations and do not involve the application of the original mistake doctrine. We do not regard them as apposite.

The appellant's contention that the use of the Mack property as a buffer zone was an error in the original zoning is without merit. *Baker v. Montgomery County,* 241 Md. 178, 185-86, 215 A. 2d 831 (1966); *Levy v. Seven Slade, Inc.,* 234 Md. 145, 154, 198 A. 2d 267 (1964); *Rohde, supra,* at 234 Md. 268.

Our holding in this case does not attenuate the firmly established principle that administrative orders in zoning matters, in general, are not to be reversed unless they are arbitrary, capricious or unreasonable. Nor does our holding disturb the rule that, while there is a strong presumption of the correctness of

original zoning or rezoning, reclassifications may be upheld if there is strong evidence of original mistake or substantial change of conditions and the issue is fairly debatable. We affirm the Circuit Court in reversing the Board because, on the undisputed facts, the Board's action was arbitrary and unreasonable.

*Judgment affirmed; costs to be paid by the appellant.*

BARNES, J., filed the following dissenting opinion.

I dissent because I cannot agree that upon the facts appearing in the record in this case, the action of the County Board of Appeals in granting the rezoning of the R-A and R-6 portion of the subject property to the B-L zone to conform with the B-L zoning of the northern portion of that property and the B-L zoning of the property to the north was arbitrary, capricious or unreasonable. I quite agree with the last sentence in the majority opinion that the test is whether the action of the Board was arbitrary and unreasonable.

In my dissenting opinion in *MacDonald v. Board of County Commissioners of Prince George's County,* 238 Md. 549, 576-582, 210 A. 2d 325, 340-344, I have already indicated that, in my opinion, the Court is in error in applying the Maryland "mistake-change in conditions" rule as the *exclusive test* in rezoning cases, and gave my reasons for my opinion. These reasons need not be repeated here. I also indicated that, in my opinion, the presumption of reasonableness is just as strong in support of a rezoning action as it was in support of the original zoning action, and this view appears to be the general rule throughout the United States. The Maryland "mistake-change" rule is a minority one, and is being abandoned by jurisdictions which originally followed it. See *MacDonald, supra,* 238 Md. at 590-600, 210 A. 2d at 348-354. Under these circumstances, the Maryland "mistake-change" rule should not be *extended* to situations in which the Court has not specifically applied the rule and in which the public interest requires a broader and more resilient treatment. In my opinion, the case at bar presents such a situation. It does not involve a rezoning which alters the general outlines of a comprehensive zoning area, but

is one which considers a small, isolated area or "spot", if you will, of approximately an acre and one-half with a frontage of approximately 209 feet on Maiden Choice Lane with a depth of approximately 299 feet. The northerly portion of the subject property—a strip 12 feet by 299 feet—was originally zoned B-L which is also the zoning classification of the property to the north; the southern portion of the subject property—a strip 20 feet by 299 feet—was originally zoned R-6 which is also the zoning classification of the property to the east and south. The westerly side of the subject property fronts on Maiden Choice Lane, and Shelbourne Road dead-ends at Maiden Choice Lane directly across from the subject property. At the southwest corner of Maiden Choice Lane and Shelbourne Road, also across from the subject property, is a small area zoned R-A but which is actually used as a parking lot for the Texaco Service Station in a B-L zone adjoining the parking lot on the west.

When the zoning map was adopted by the Baltimore County Council on June 2, 1959, the area of the subject property between the strips of B-L on the north and R-6 on the south was finally zoned R-A (residential-apartment) as a "buffer" zone. Mr. Gavrelis described the considerations leading to the establishment of the small "buffer" zone as follows: The Planning Board "sought to protect a comprehensive and orderly set of land use potentials for the edge situation that on one hand would provide some transition, some buffering, some reasonable set of use potentials for the Mack property, and it turned out to be the edge property, the one that was closest, *as to whether it might go commercial or remain residential* or possibly be recommended for land use potentials that were something in between outright single-family residential and outright commercial. After a great deal of consideration, the Planning Board recommended here the third alternative * * * and the map does in fact show that the County Council as a matter of legislative intent did affirm the fact that the Mack property should be zoned for apartment purposes, and should be used as a buffer, as a transition." (Emphasis supplied).

The same consideration led to the establishment of the small R-A "buffer" zone, 100 feet by 400 feet, across Maiden Choice Lane and to the west of Shelbourne Road, already mentioned.

It seems clear to me that the future zoning of these small "buffer" zones depends upon the actual development in the area, that is, as Mr. Gavrelis states "whether it might go commercial or remain residential." This is a matter for the consideration of the County Board of Appeals, in the exercise of its delegated legislative power to rezone when the land owner appears for a rezoning of the small "buffer" area. The Maryland "mistake-change" rule should not, in my opinion, apply in this special situation, inasmuch as the placing of a small area of individual property in a "buffer" zone originally contemplates a re-examination of its zoning status in the future by the Board depending upon the actual development in the area. If the development is predominantly commercial the Board may reasonably rezone the small area as commercial; if the development is predominantly residential it may reasonably rezone it R-6 or leave it zoned as R-A.

The suggested basis for the Maryland "mistake-change" rule —a preservation of the comprehensive zones from unjustified piecemeal rezoning—should not, in my opinion, be made applicable to this small, individual parcel of land forming a "buffer" zone.

The facts in the record indicate that the actual development in the area has indeed been commercial and that the Board could reasonably conclude that the R-A and R-6 portions of the subject property should be rezoned to the B-L zone.[1]

---

1. I agree with the majority that the "mistake" in having three zones on the subject property is not the type of "mistake in original zoning" contemplated by the "mistake-change" rule. Although it is difficult to accept the proffered explanation that the B-L and R-6 strips on the north and south sides of the subject property, respectively, resulted from a "pen-stroke" (the pen would have an extraordinarily wide stub point and one which resulted in a strip of 20 feet on one side as against a strip of 12 feet on the other), this is immaterial in the present case except to indicate an anamolous zoning situation which would justify correction by the Board. That correction could be made either by rezoning the subject property all B-L or all R-A and either was fairly debatable. At least the action of the Board corrected the admitted mistake; the reversal of the order of the Board continues the mistake. It may be added, that the use by the zoning authorities of zoning maps with a scale of 1000 feet to an inch in the original zoning

At the time of the 1959 zoning, the property to the north zoned B-L had not been developed. After the zoning, the construction of the Leeds Federal Building (a large office building) was begun and completed. The Food Fair was already built in 1959 as was a Cities Service gasoline station and a large bowling alley. As has been stated, across Maiden Choice Lane toward the north is a large Texaco service station and there is also a large and active shopping center. Behind the Texaco station there is a large paved area used as parking space for the shopping center and the service station, the southern portion of which is the 100 feet by 400 feet R-A zone which is used for parking in connection with the use of the B-L zone.

Miss Mack, the owner of the subject property testified that the air-conditioning unit outside the Leeds Federal Building & Loan Association emits a great deal of noise making it impossible for her to use the bedroom on the north side of the existing dwelling house. Her yard is cluttered with beer bottles, beer cans and other debris which the people using the adjacent parking lot throw on her property and the police have been unable to stop it. She indicated that she had tried unsuccessfully to sell the property in recent years. The only offers she has had have been those of a commercial nature.

It may be observed also that since Shelbourne Road dead-ends at Maiden Choice Lane opposite the subject property, the lights from motor vehicles using that road would necessarily shine directly at the subject property, making it difficult—one would think—to develop the subject property for apartment purposes.

An expert for the property owner testified that in his opinion the highest and best use for the subject property would be for the uses permitted in the B-L zone with a special exception

and the marking of zones on them without a personal inspection of the site rezoned in a settled, improved area, or any personal investigation of the property lines as shown by the available land records or on the ground, may well be in itself arbitrary and capricious action on the part of the County Council in establishing the 1959 lines. As this point was not raised before the Board, the lower court or in this Court, it is not before us. Maryland Rule 885. It does, however, present a strong case for correction of the mistake.

for a gasoline service station; that because of the way the land is situated, it would not warrant the erection of apartments on the land; that the proposed special exception and use would not be detrimental to the health, safety or general welfare of the locality involved, would not tend to create congestion in the roads, streets or alleys in the locality, would not create any potential hazard from fire, panic or other dangers and would not tend to overcrowd land, cause undue concentration of population, interfere with adequate provisions for schools, parks, water, sewerage, transportation or other public requirements, conveniences or improvements or interfere with adequate light and air.[2]

In the light of this testimony, and all of the circumstances, mentioned, the granting of the B-L zoning and special exception was, in my opinion, fairly debatable and in approving the application with three restrictions,[3] the Board did not act arbitrarily, unreasonably or capriciously.

There was, of course, testimony offered before the Board which might have led it to a different conclusion if it had accepted that testimony,[4] but it is entirely clear that the evaluation of the facts is for the Board and not for the Courts. The Courts will not substitute their judgment for that of the Board, when there is evidence before the Board to make its determination "fairly debatable". *Pallace v. Inter City Land Company,* 239 Md. 549, 212 A. 2d 262 (1965).

---

2. Not only does this testimony indicate that no element of the police power would be injured by the proposed rezoning, but absence of injury to these elements is necessary to grant a special exception. See Section 502.1 of the Baltimore County Zoning Regulations.

3. These restrictions were: 1. Screened planting no less than six feet in height was required to be planted between the service station and the existing residents to the south. 2. Egress and ingress must be approved by the proper State and County authorities. 3. There would be no more than one vending machine on the outside of the building.

4. The County Board of Appeals was not bound to accept the recommendations of the Planning Board but could adopt the recommendations of the owner's expert. See Bujno v. Montgomery County Council, 243 Md. 110, 118, 220 A. 2d 126, 130 (1966).

Although I agree with the majority that the facts do not establish a constitutional taking of property without due process of law or the payment of just compensation, as the owner has not established that no reasonable use whatever can be made of the subject property under the existing zoning, nevertheless the difficulty of use for residential purposes, the development of the immediate area to the north and west for commercial purposes and the other facts already mentioned, are important facts to be considered on the issue of whether the action by the Board was arbitrary, unreasonable and capricious. The basic doctrine to be kept constantly in mind is that there should be a free use of private property and that restrictions upon that free use by the governmental power to zone is only justified by the exercise of the police power. As Judge Delaplaine, for the Court, aptly stated in *City of Baltimore v. Cohn*, 204 Md. 523, 530, 105 A. 2d 482, 486 (1954):

> "* * * the governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of the use of his land is not unlimited, and such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare. Legislative bodies have no authority, under the guise of the police power, to impose unreasonable and unnecessary restrictions on the use of private property in pursuit of useful activities. *Nectow v. City of Cambridge*, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; *State of Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, 86 A.L.R. 654."

See also *Feldman v. Star Homes*, 199 Md. 1, 6, 84 A. 2d 903, 905 (1951). When the expert body exercising delegated legislative power determines upon conflicting evidence that the proposed use will not injure the public welfare and that the elements justifying the exercise of the police power are not injuriously affected by reason of a freer use to be made of an individual property, the Courts should most certainly not disturb an action granting such a freer use of private property.

Then too, it should be kept in mind that inflexible zoning may create and perpetuate monopolies, declared by Article 41 of the Declaration of Rights of the Maryland Constitution to be "odious, contrary to the spirit of free government and principles of commerce, and ought not to be suffered." The case at bar is a good illustration of this, as a substantial part of the opposition to the granting of the special exception for the proposed Shell service station came from the owner of a nearby Cities Service station who was also the owner of a half-interest in the shopping center including the Texaco service station across Maiden Choice Lane to the west of the subject property. This observation is not intended to be critical of an owner who seeks to preserve an existing advantage created by the zoning laws; it is intended to point out the desirability of upholding the action of boards of appeal in the exercise of a delegated legislative power for the freer use of private property when such action is fairly debatable.

I would reverse the order of the Circuit Court and affirm the order of the Board of March 6, 1965.