FRANKEL *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 236, September Term, 1959.]

98

*Decided July 1, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Ronald H. Goodman,* with whom were *Alvin E. Friedman* and *Friedman & Goodman* on the brief, for appellant.

*James B. Murphy, Assistant City Solicitor,* with whom were *Harrison L. Winter, City Solicitor,* and *Ambrose T. Hartman, Deputy City Solicitor,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Dr. Victor Frankel appeals from an order of the Baltimore City Court, which affirmed the action of the Board of Municipal and Zoning Appeals (Board) in denying him a permit to construct a two-story and basement professional office building on his unimproved lot of land located at the southwest corner of the intersection of Park Heights and Manhattan Avenues.

The lot is located in an "E" area, and residential use zone, which limits its use, for all practical purposes, to the construction of semi-detached or single dwellings. Frankel applied to the Board for an exception under Section 36, subsections (b) and (c), of the Baltimore City zoning ordinance. These subsections allow the Board to grant a building permit, *inter alia,* where the permissible use of land is limited because of the irregularity of the shape of land, topography, grade or accessibility; or where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of the zoning ordinance. The Board denied the permit on two grounds: it found no sufficient reasons to warrant an exception to Section 10 of the zoning ordinance [residential use]; and no sufficient reasons to "warrant it in making an exception to the area regulations."

The lot is an irregular corner one with a frontage on Park Heights Avenue, a main arterial highway 90 feet wide, of 149.27 feet tapering from a width at its northern end of 56.2 feet on Manhattan Avenue to a width of 92.25 feet on its southern boundary. It was acquired by Frankel, shortly before his application to the Board, as the result of negotiations between him and the Associated Jewish Charities (Associated), whereby Associated obtained from him a lot immediately north across Manhattan Avenue and Frankel received

from Associated the subject property. At the time of his acquisition thereof, there was located thereon an abandoned 12 by 20 feet bus terminal and waiting room, which had previously been utilized (beginning in 1938) by the Transit Company under special-exception permit.

The subject property and the immediate neighborhood have been zoned residential since the beginning of zoning in Baltimore (1931), but within the last few years the neighborhood has rapidly and radically changed from residential uses to commercial, institutional and office uses. Immediately to the south of the property in question are five row houses, a use not ordinarily permitted in a residential "E" zone. Immediately to the north, the entire block is occupied by the Jewish Community Center and Baltimore Hebrew College. Across the street on the east side of Park Heights Avenue are the Synagogue of the Beth Jacob Congregation, a public parking area and a large public junior high school. All of the last mentioned buildings were built after the removal of residential properties. A recently completed part of Northern Parkway is adjacent to this high school on the south, and an extension of the Parkway from Park Heights Avenue to Reisterstown Road on the west side is now under way. This extension will be to the south of the five row houses referred to above. South of the beltway extending to Park Circle (approximately 2 miles) on Park Heights Avenue are commercial and office uses, interspersed with residences. On the east side of Park Heights Avenue, at its intersection with Rogers Avenue, a short distance south of Northern Parkway, are two gasoline stations. In 1952 in the case of *Esso Standard Oil Co. v. Mullen,* 200 Md. 487, 490, 90 A. 2d 192, this Court had occasion, in determining that a restrictive covenant was no longer enforceable, to describe the area involved in the present case. The Court, speaking through Judge Henderson, said: "It was shown that the neighborhood is now dominantly and progressively commercial. There is a filling station on the southeast corner [of the intersection of Park Heights and Rogers Avenue], and business establishments on the other two corners. On both sides of Park Heights Avenue and Rogers Avenue for several blocks the development is

solidly commercial, although there are a few surviving residential frame dwellings to the north of the lots in question, one of which, however, is occupied by a paperhanger. * * * The change in character is perhaps not so pronounced in the tract in question as in the surrounding area, particularly along the main arteries."

## I

We shall first consider the contention made by the appellee that the appellant has no standing. The City correctly states that the appellant obtained the lot with full knowledge of its zoning classification; and it argues that this fact precludes him from asserting any claim of hardship. We think that the evidence in this case, as will be pointed out below, shows that under the present zoning classification, without the benefit of any exception, the appellant's property cannot be put to any reasonable use. The case, then, is not merely one of hardship, but of a taking in a constitutional sense. *Nectow v. City of Cambridge,* 277 U. S. 183; *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482. Cf. *Walker v. Talbot County,* 208 Md. 72, 116 A. 2d 393; *Marino v. City of Baltimore,* 215 Md. 206, 220, 137 A. 2d 198; *Hoffman v. Mayor & C. C. of Baltimore,* 197 Md. 294, 79 A. 2d 367. We, therefore, find it unnecessary to consider whether any limitation should be placed on the rule stated in *Gleason v. Keswick Imp'v't Ass'n,* 197 Md. 46, 50, 78 A. 2d 164, which stands in the way of one seeking a variance (or its equivalent), because of alleged hardship, when he has purchased the property with full knowledge of the zoning restrictions of which he complains.

## II

We described the subject property and surrounding neighborhood in some detail above, because we think it substantiates the opinions of the experts offered by the appellant. Melvin Goldman, with a splendid background of real estate knowledge and experience and whose office is some 300 feet from the Frankel property, qualified as an expert. After testifying to the changes in the neighborhood, he stated that their combined effect is "overwhelming evidence of the tre-

mendous change that has taken place in the neighborhood within recent years."

He also testified that due to the changes in the neighborhood, the existence of the commercial, institutional and office uses and the irregularity of the land, it would be highly impractical to attempt to develop this property by the erection of residences thereon, that it could not reasonably be used for residential purposes, and it would be economically unsound for a developer to undertake to erect residences on the property, as it was a very unlikely and unsatisfactory site for dwellings. He added that any attempt to develop the lot for residential purposes would be "sheer economic suicide."

Irving S. Keyser, in the brokerage, investments, and mortgage aspect of the real estate business for 20 years and also a financial advisor to building associations and presently President and member of the Executive and Loan Committees of a Federal Savings and Loan Association in the immediate area of Frankel's property and an active appraiser, testified that the character of the neighborhood has changed in the last 12 to 15 years and much more so in the last five. He testified further that in his opinion, due to the change in the neighborhood, the character of the area involved and the combined effect of having in one location such a large number of institutional type buildings, parking lots and the express highway, the subject property would certainly have no market value, if it were developed for residential use, and, it was his belief that any applicant for a loan from his institution would not be granted a mortgage for construction for residential purposes.

Morris Steinhorn, a registered architect, associated with architects and doing architectural work for the past 18 years, testified that "due to the irregularity of the lot and set backs it would not be feasible for residences."

Another expert, A. Gordon Gilbert, testified for the appellant after giving an impressive background of qualifications. He has qualified as an expert in State, County and Federal Courts, various Federal agencies, is a member of many institutions, real estate boards and appraisal societies and is also experienced in real estate developments. He stated that:

"* * * the property is unsuitable for use for residential purposes, although it is zoned for residential purposes.

\* \* \*

"It is my opinion that, surrounded by such uses, the property would not be saleable for residential purposes, if so improved, or if saleable would be saleable at such a price as to reflect no value in the land."

Gilbert also said he could assign no value to the land for residential purposes.

The appellee offered one witness who qualified as an expert and testified that, in his opinion, two semi-detached homes, 16 feet by 31.6 feet, or two cottages, 20 feet by 30 feet, could be built upon the property that would be saleable in the vicinity of nine to eleven thousand dollars, subject to a ground rent of about two thousand dollars. We shall not go into his testimony in detail, because, as indicated above, the uncontrovertible physical facts support the testimony given, and the conclusions reached, by the appellant's experts, and, we think, clearly show that the present zoning ordinance restricts the use of the Frankel property so that it cannot, within the sphere of its present zoning classification, be used for any reasonable purpose. When this occurs, zoning goes beyond permissible and legal regulation and must yield to the rights of the property owner. The Court pointed out in *City of Baltimore v. Cohn,* 204 Md. 523, 530, 105 A. 2d 482, that although a zoning ordinance may not be invalid *per se,* it may, nevertheless, be found to be clearly arbitrary and unreasonable when applied to particular premises. And, if a property owner be unable, permanently, to use his property for any of the permitted purposes and is therefore deprived of all beneficial use thereof and has been refused a variation by an administrative board in the exercise of a discretion which the zoning ordinance has conferred upon it, he may successfully attack the validity of the ordinance as a taking of his property without compensation. See also, *N. W. Merchants Term v. O'Rourke,* 191 Md. 171, 60 A. 2d 743; *Hoffman v. Mayor & C. C. of Baltimore,* 197 Md. 294, 79 A. 2d 367; *Arverne Bay Construction Co. v. Thatcher,* 15 N. E. 2d 587

(N. Y.) cited in both the *Cohn* and *Hoffman* cases, *supra;*
*Congressional School of Aeronautics v. State Roads Commis-*
*sion,* 218 Md. 236, 242, 146 A. 2d 558; *Marino v. City of*
*Baltimore,* 215 Md. 206, 218, 137 A. 2d 198. In the instant
case, the appellant, we think, met the heavy burden placed
upon a property owner and proved by clear and convincing
evidence that he would be deprived of all reasonable use of his
property, if the provisions of the present zoning ordinance, as
they relate to the *use* of the property, are applicable to it;
hence, under the rule laid down by the authorities named
above, the action of the Board in denying him the right to
construct an office building in a residential use district was, in
a legal sense, arbitrary and capricious.

We are not unmindful of the fact that in order to attack
successfully the zoning ordinance as it applied to his property,
it was incumbent upon Frankel to show that the hardship
complained of affected his particular premises and was not
generally common to other property in the neighborhood.
*Easter v. Mayor & City Council of Baltimore,* 195 Md. 395,
400, 73 A. 2d 491; *Marino v. City of Baltimore, supra,* 215
Md. at page 219. But here, too, he met the burden: the ir-
regularity of the shape of his lot, the fact that it was located
on a corner of an arterial highway and another street, that it
is bounded on two sides entirely by parking lots and public
and semi-public institutions, that immediately to its south are
the row houses, and other factors mentioned in the statement
of facts manifest that the particular premises were peculiarly
affected by difficulties and hardships that did not prevail gen-
erally with respect to the use of other property in the area.

### III

The last phase of the case reaches us in a most unsatis-
factory state. As indicated above, in Baltimore property is
classified into "use" districts and "area" districts. The Board
found (and the evidence seems to support the finding) that
the building permit, as applied for, violated certain of the
provisions of the zoning ordinance relating to set-back re-
quirements. The primary purpose of the evidence presented
was to show that it would be impracticable and economically
unsound to attempt to develop the subject property for resi-

dential purposes, and, therefore, Frankel was placed under a singular disadvantage and suffered a peculiar hardship that rendered the zoning ordinance invalid insofar as it related to the "use" of the property. With this foremost in mind, apparently the question of showing that the failure to grant exceptions to the set-back restrictions was whimsical or capricious was sorely neglected, if not completely ignored. No testimony is in the record extract that purports to show that the office building proposed to be built had to be of the dimensions suggested, and that it was arbitrary action upon the part of the Board not to grant exceptions concerning these set-back requirements. The chancellor, while he noted in his opinion the claim of the Board that Frankel's application violated these restrictions, made no finding or ruling concerning the same. Under these circumstances, we shall, in accordance with Rule 871 a, remand the case so that the appellant may offer additional testimony on this phase of the case, only; or the application for the building permit amended so as to conform with the requirements of the set-back provisions of the ordinance or any exceptions thereto that the Board may deem it proper to grant.

> *Case remanded without affirming or reversing the decree, for further proceedings not inconsistent with this opinion; the appellee to pay the costs.*