## MAYOR AND COUNCIL OF ROCKVILLE
### *v.* COTLER ET AL.

[No. 86, September Term, 1962.]

(Two Appeals In One Record)

*Decided January 10, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*William A. Linthicum, Jr.,* with whom was *George W. Young, Jr.,* on the brief, for appellant.

*James R. Miller, Jr.,* with whom were *Miller & Miller* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The City of Rockville appeals from the decrees in two equity cases which were tried together in the Circuit Court for Montgomery County and these appeals were heard together on one record in this Court. The decrees appealed from held invalid certain zoning actions of the appellant City with regard to two properties owned by the appellees, the Cotlers, located in an area in Montgomery County consisting of approximately twelve acres, which (over the protests of the appellees) had been annexed to Rockville on September 11, 1959. These decrees also enjoined the City from interfering with the use of the properties in question in any manner permitted under the County industrial zoning classification (I-1) which was applicable to them immediately prior to their being annexed to the City of Rockville.

The annexed twelve-acre area is roughly triangular in shape and lies to the east or northeast of North Horner's Lane, with its longest side along that street (which is not perfectly straight). The smaller of the appellees' properties is a one-acre lot and in shape is roughly a right angle triangle. One side of this triangle fronts on Horner's Lane for about 400 feet,

the next side runs almost at a right angle about 200 feet east from that street and the third side (the hypotenuse) is approximately 450 feet long. The last line runs along a part of the boundary of the tract annexed to the City. There was a warehouse on this lot at the time of the annexation and an addition to it or a similar building was under construction.

The larger tract, consisting of 6.14 acres, really constitutes two tracts, since it is bisected by a street known as Dover Road, running northeasterly, which leads to the county dump located just a little way outside the city limits. On one part of this tract there was at the time of annexation and still is a rather large building used for an industrial purpose. There are a number of substantial industrial uses on adjacent or nearby properties just beyond the city boundary. The southern boundary of one part of the appellees' second tract is about 375 feet north of the one-acre lot. This part of that tract has a frontage on Horner's Lane of about 125 feet up to Dover Road and abuts on that road for about 625 feet to the newly established city line. Its eastern side follows that boundary south for about 400 feet. The southern line of this tract is also about 400 feet long. The other part of the appellees' second tract is to the northwest of the first part and of Dover Road. It has a frontage northwest of Dover Road of about 375 feet on Horner's Lane. There is a relatively small right angle triangle, with a frontage of about 325 feet on Horner's Lane, which lies in the northwest corner of the annexed twelve-acre tract. On the north it runs along the new city boundary for a little less than 400 feet, and to the southeast it borders the appellees' land for about 150 feet or a little more.

On Horner's Lane opposite the appellees' one-acre lot, there are a church, some vacant land, one house and a grocery store. Opposite the appellees' 6.14-acre tract, almost the whole of the westerly side of Horner's Lane is taken up by a cemetery. There are no residences fronting on that side of Horner's Lane between the cemetery and the grocery store. On the easterly side, between the appellees' two tracts are two houses, and there is one other house in the triangle in the northwest corner of the annexed area.

It is not disputed that when the twelve-acre area was an-

nexed to Rockville, it passed from County to City jurisdiction in zoning matters. On the date of annexation the City had on its books an ordinance which provided that any area annexed to the City should immediately be classified in the R-S Zone (Residential, Suburban, half-acre lots) until a zoning map should be adopted by the Mayor and Council, and which further provided that the Planning Commission should submit zoning recommendations for such an area within six months after annexation. The appellees applied to have their properties rezoned for industrial use. Their application was rejected *in toto* as to the one-acre lot by a resolution of the Mayor and Council, and their application pertaining to the 6.14-acre lot was granted as to only 4.83 acres. Without reviewing all the proceedings, we note that the Mayor and Council initiated proceedings for zoning or rezoning of such part of the 12-acre annexed area as had not been rezoned as industrial on the appellees' application pertaining to their larger tract. A public hearing was held, and the Mayor and Council thereafter adopted a resolution which zoned (or rezoned) this part of the twelve acres as R-75 (Residential, lots of 7500 square feet, a relatively high density classification).

The net effect of the actions of the Mayor and Council was to zone roughly the northeastern apex of the twelve-acre area as industrial, to zone the small northwestern corner as R-75, to zone a fairly large triangle at the southern corner of the twelve-acre area as R-75 and to zone a connecting strip about 100 to 110 feet deep along the Horner's Lane frontage of the appellees' 6.14-acre tract as R-75. The whole of the appellees' one-acre lot in the southern corner was thus zoned R-75, as well as the strip of their larger lot. The chief reason assigned by the Mayor at the last hearing for the denial of the appellees' applications insofar as their Horner's Lane frontages were concerned was that there was a need for housing for Negroes in this area. In this view he was supported by some protestants at the hearings. One protestant also expressed the opinion that industrial development would not blend in with the church across the street, which was being remodeled. The Mayor also expressed his opinion that the tract then in use for a County dump would not long be so used, and he stated that the then

current budget did not provide for the paving of Horner's Lane and certain other streets in a manner suitable for industrial traffic which planning authorities projected as arterial streets.

The action of the Mayor and Council was taken in the face of the recommendation of the Maryland-National Capital Park and Planning Commission that this entire annexed area be zoned as industrial, the recommendation of the City Planning Commission to the same effect, evidence of plans that streets of which the Mayor spoke should be arterial streets, expert testimony that industrial use was the highest and best use to which the appellees' property could be put, evidence that there were in the immediate vicinity fifty vacant lots at which water and sewer facilities were then available and eleven more at which they would be within a year, and expert opinion that a reasonable, prudent person would not develop the area in question as either R-75 or R-S because of the proximity of industrial development to the rear of the proposed strip fronting on Horner's Lane, and that "of all the land you could find for residential purposes, this would be the least desirable." The expert witness who expressed the opinion just quoted supported it by this statement: "If you are solving a problem by putting an area there which is residential which will probably become blighted, you are just creating another problem the city will have to act upon in the years to come." There was no expert testimony in contradiction of these views. Individually, some of these considerations would not be controlling; taken together, their cumulative effect is very strong to show the absence of any sound basis for the City's action.

The appellees sought relief in equity, and equitable jurisdiction is not challenged on this appeal. Cf. *Congressional School of Aeronautics v. State Roads Commission*, 218 Md. 236, 243, 146 A. 2d 558. By the time the trial court was called upon to decide the present cases, the automatic, omnibus R-S zoning ordinance was no longer operative with respect to the properties now in question and we think it unnecessary to the determination of these cases for us to pass upon it or upon the related question of whether or not the appellees' course of action involved a waiver of objections to its validity. We also find it unnecessary to decide whether there should have been a hear-

ing before the Planning Commission relating to the zoning or rezoning which resulted in the R-75 classification of much of the twelve-acre area.

Nor do we find it necessary to pass upon the appellees' contention that the action of the City has deprived them of any reasonable use of their property and so constitutes a deprivation of property without due process of law.

Here we think that the action of the City which purported to be and, we think, was rezoning was arbitrary, discriminatory and unreasonable. It flew in the face of facts developed at the hearing and, without any showing of adequate cause therefor, it deprived the appellees of the use of part of their property for which it was best suited. Here we find elements of a decision being based upon a plebiscite of neighbors, which is not permissible (*Montgomery County Council v. Scrimgeour,* 211 Md. 306, 313, 127 A. 2d 528; *Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346) ; of a decision not based upon evidence, which is also not permissible (*Hedin v. Board of County Commissioners of Prince George's County,* 209 Md. 224, 233-36, 120 A. 2d 663) ; and finally, and here perhaps most important of all, of an effort to create a no man's land or buffer zone in property of the appellees for the benefit of others by preventing the appellees from using their property for any of the purposes for which it is peculiarly suitable. That, too, is not permissible. *Northwest Merchants Terminal, Inc. v. O'Rourke,* 191 Md. 171, 187, 60 A. 2d 743; *Hoffman v. City of Baltimore,* 197 Md. 294, 79 A. 2d 367; *Hedin v. Board of County Commissioners of Prince George's County, supra,* 209 Md. 224, at 232. The cases last cited are, we think, controlling here. We, of course, recognize the rule that the fact that some other use than that which is permitted under applicable zoning may be more profitable than that which is permitted is not of itself sufficient to overturn the established zoning, but here we find no sound basis for the limitation sought to be imposed. The matter is not, we think, in the range of the fairly debatable.

The injunctions as issued do, however, seem to go somewhat too far by, in effect, restoring the previous County zoning classification to lands now in the City of Rockville. We think that the injunction should, therefore, be modified so as

to prevent interference with uses permitted under the I-1 zoning classification of the City.

> *Decrees affirmed, subject to modification in accordance with this opinion and case remanded for the entry of a decree in accordance with this opinion, the costs to be paid by the appellant.*