## PALLACE, ET AL. *v.* THE INTER CITY LAND COMPANY

[No. 377, September Term, 1964.]

550

*Decided July 29, 1965.*

The cause was argued before HORNEY, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Edward F. Borgerding,* with whom were *Francis X. Borgerding* and *James P. Pallace, Sr.,* on the brief, for appellants.

*Richard C. Murray,* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court. BARNES, J., concurs in the result. Concurring opinion at page 559 *infra*.

The Inter City Land Company (the applicant) filed a petition before the Zoning Commissioner of Baltimore County, in November, 1961, for the reclassification of three parcels of land in a community known as Harford Park. The area is governed by the original zoning of January, 1945, and each of the three parcels is presently zoned R-6 (residence 1 and 2-family). The applicant sought to have the parcels rezoned to R-A zone (residence, apartments). After a public hearing, the Zoning Commissioner denied the application for reclassification as to all three parcels. The applicant appealed to the County Board of Appeals (the Board). At the hearing before the Board, the applicant deleted one of the parcels from its application, restricting the petition to the two lots referred to as Parcels A and B. After a public hearing at which the applicant, its witnesses and the protestants (the appellants and cross-appellees) were heard, the members of the Board, with the permission of the attorneys for both the applicant and the protestants, personally inspected the site. In an opinion filed December 17, 1963 the Board unanimously found that the applicant had failed to prove that there has been sufficient change in the character of the neighborhood to warrant reclassification and that there was no testimony regarding error in the zoning map. The petition for reclassification was denied as to both parcels. On appeal, in the Circuit Court for Baltimore County, Judge Menchine found that the questions as to whether changes occurring since the original zoning of 1945 and the nature of the topography were reasonably debatable and that there was no basis for reversal of the Board's decision on these grounds. However, as to Parcel B, the judge found that the land involved was not susceptible of any reasonable use within its present zoning and that the existing zoning classification as to this parcel operates as a constitutional confiscation. The judge affirmed the decision of the Board as to Parcel A, and reversed the Board as to Parcel B with directions to reclassify that parcel from R-6 to R-A. The applicant appealed from the affirmance of the Board's de-

cision as to Parcel A. The protestants appealed from the reversal of the Board's decision as to Parcel B.

Harford Park is a large development owned by the applicant, in the ninth election district of Baltimore County, close to the northern boundary line of the City of Baltimore, to the south of Taylor Avenue, east of Oakleigh Road and west of Old Harford Road. The two parcels of land involved are located in the middle of this development. Parcel A is a generally flat unimproved lot consisting of 14.43 acres, approximately 1500 feet in length and 700 feet at its widest point. Parcel B consists of 1.03 acres; it lies slightly northeast of Parcel A, is 650 feet in length, with a maximum width of 155 feet.

The applicant owned the unimproved land, now known as Harford Park, for many years before 1945. Prior to and since that date, the Park has been developed by the applicant with the building of from 700 to 800 one-family homes, in accordance with the R-6 residential classification. Adjacent land has been improved with individual homes by two other builders.

Four exceptions to the original zoning have been granted in the Park. In April, 1946, a plot of ground of about 3 acres at the northern end of Parcel A and southeast of Parcel B was reclassified from A-residential to E-commercial for a proposed shopping center. The shopping center has not as yet been built but the plot has been developed by the applicant as a community membership swimming pool and recreation center with accessory parking. In December, 1947, 3-½ acres, about one-half a mile from Parcel B, were reclassified from A-residential to E-commercial. Although proposed for a shopping center, this land is still unimproved. In April, 1948, a lot 100 feet by 120 feet was reclassified from the R-6 to the R-A zone, and in April, 1949, another small lot was similarly reclassified; a four unit apartment house has been built on each of these lots. All four of these exceptions were granted on the petitions of the applicant.

Outside of Harford Park and on the other side of the applicant's commercial land to the southwest of Parcel A, an unimproved tract was reclassified to B-M (Business-Major) in November, 1955. An apartment structure known as Dutch Village, which has the external appearance of row homes, has been

built in Baltimore City, approximately 1000 feet from the south-western tip of Parcel A, and another apartment structure known as Wellington Gates has been erected in Baltimore City on the far side of Dutch Village over one-half a mile from Parcel A and about a mile from Parcel B.

Herring Run goes through the Harford Park community. The channel of Herring Run was first approved by Baltimore City as a 40 foot storm drain channel but subsequently has been extended to a 100 foot flood reservation. Contracts have recently been awarded for the construction of Perring Parkway through the Park. The parkway will have a width of 180 feet. This highway almost touches Parcel B at one point and will be removed from Parcel A by only two or three lots.

The applicant contends, as to both Parcels A and B, that the action of the Board in denying the reclassification requested was arbitrary and capricious and that, as to Parcel B, the Board's action in denying the application was an unconstitutional taking of the applicant's property.

I

At the hearing before the Board, the applicant produced as witnesses Mr. L. Allan Evans, a registered surveyor, who is the head of a surveying and engineering company; Mr. William Barnes Hall, the president of the applicant and an experienced builder; and Mr. Frederick P. Klaus, a qualified appraiser and real estate expert.

On the first issue here involved, Mr. Evans testified that he and his predecessor had been engaged in engineering work with the Harford Park development since 1946. Parcel A, in his opinion, could be laid out physically into 45 lots of the R-6 size but it would be necessary to place almost 40,000 cubic yards of fill over the original ground level. As the Board pointed out in its opinion, however, there was conflicting testimony as to the amount of fill needed, its cost, and, indeed, as to whether or not it could be procured without cost. A substantial amount of the required fill, it was shown, was already in place.

Mr. Hall testified as to the changes in the area since the 1945 zoning. Mr. Klaus testified that the highest and best use of both Parcels A and B, under existing circumstances, would be for

residential apartments. In his opinion, the erection of apartment houses in the two parcels would create a good transitional zone between the two commercial properties and the development area in the residential zone. Other testimony of the applicant's witnesses referred to the relationship of the parcels to the Perring Parkway and the storm drainage channel with the ensuing difficulties of installing a street on Parcel A and the development of Parcel B.

We have repeatedly referred to the strong presumption of the correctness of original zoning. *MacDonald v. County Board,* 238 Md. 549, 559, 210 A. 2d 325 (1965) and cases therein cited. To sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or of a substantial change in conditions. *Pahl v. County Bd. of Appeals,* 237 Md. 294, 297, 206 A. 2d 245 (1965) and cases therein cited. In this case, there is no contention of mistake. Indubitably, there have been some changes since the original classification both within and beyond the large community of Harford Park. However, there was ample ground for the Board to conclude that the changes in zoning classification which had been permitted upon the requests of the applicant within the Park were minimal in nature. The two small apartment houses, surrounded by one-family homes, may well have been considered comparatively insignificant changes; Mr. Hall admitted that between 200 and 300 individual homes had been erected in the Park since he built the last apartment house. The swimming pool which has been erected on a plot rezoned as commercial may be regarded as a service to the existing large one-family residential community. The other lot rezoned as commercial is proposed as a shopping center, a use which we have held is consistent with the needs of an existing residential area. See *MacDonald v. County Board, supra,* at 557. The developments outside of Harford Park, the evidence shows, are not inconsistent with the continuation of the development of that community for one-family residences. Some of the changes referred to by the applicant are a substantial distance away from the Park. The applicant argues that the presumption of the correctness of the original zoning has been eroded by time and the changes which have taken place. However, it is at least fairly

arguable from the testimony and exhibits that the predominant development since the original zoning has been the continued building by the applicant of hundreds of one-family residences in the Park itself.

As we have repeatedly emphasized, it is not for the courts to zone or rezone; the courts will not substitute their judgments for that of the expertise of the zoning officials. *DePaul v. Board,* 237 Md. 221, 236, 205 A. 2d 805 (1965) and cases therein cited.

On a review of all the testimony and the exhibits, we can not say that the action of the Board in refusing to grant the applications because of changed conditions was arbitrary or capricious in any sense. We agree with Judge Menchine that the question of whether the changes require the requested reclassification of the two parcels is reasonably debatable and that therefore the Board's decision on this issue must be affirmed.

The applicant cites *Missouri Realty, Inc. v. Ramer,* 216 Md. 422, 140 A. 2d 655 (1958) in support of its contention that the action of the Board in refusing to reclassify the parcels was unsupported by substantial evidence. The property involved in that case was in the vicinity of Harford Park to the north of Taylor Avenue and to the east of Oakleigh Road. The Zoning Commissioner determined that the petition to change about 26 acres of land from the R-6 zone (cottage or semi-detached) to R-G zone (group housing) should be granted upon the grounds that the change of the character of the neighborhood since the original zoning warranted the reclassification. The Board of Zoning Appeals (now the Board of County Appeals) affirmed. The Circuit Court for Baltimore County reversed the action upon the ground that there was not sufficient evidence of a change in the character of the neighborhood to support the Board's finding. We held in that case, as we hold here, that the evidence made the question of reclassification fairly debatable and made it a matter for the experts comprising the Board, rather than for the court, to consider and determine. The applicant also relies upon *Mayor and Council v. Cotler,* 230 Md. 335, 187 A. 2d 94 (1963) and *Board v. Oak Hill Farms,* 232 Md. 274, 192 A. 2d 761 (1963). In those cases we found there

was no evidence to support the order of the zoning authority; in this case, while the protestants put on no expert testimony, the testimony of the witnesses produced by the appellant is to be considered in the light of the facts of the continued development of Harford Park by the applicant as a one-family residential community, the large number of one-family residences surrounding the two parcels involved, and the erection of individual homes by other builders contiguous to the Park. The Board's opinion shows that it considered all the facts involved. Some physical facts are susceptible of varying interpretations. For example, the construction of Perring Parkway may serve the existing one-family community of Harford Park, already consisting of 700 or 800 individual homes, quite apart from whether or not there will be apartment houses to increase its traffic.

We do not intimate that on the evidence the Board did not have the legal authority to grant the petitions for reclassifications, if it had deemed such action proper. We hold only, as we have so often held before, that the facts in each case must be considered on their own bottom; that so considered, the issue before the Board as to changed conditions was fairly debatable; and that its decision was supported by substantial evidence and was not arbitrary or capricious.

## II

Before the Board and in the court below, the applicant contended that the Board's action constituted a taking of the applicant's property as to both parcels. Before us, the applicant confines its constitutional argument to Parcel B.

As to this parcel, Mr. Evans testified that the lot has grades of 1½ to 1, or 2 to 1, and that cottage construction would require subfoundations in addition to normal cellars which would be economically unfeasible. He also stated that it would be impossible to install individual driveways to provide access for cottages. Mr. Hall further described the problems inherent in the development of this parcel and stated that, in his opinion, cottages could not be built on them. Mr. Klaus was of the opinion that it would not be economically feasible to develop this parcel within the R-6 zone.

In *DePaul v. Board, supra,* at 227-29, we referred to our decisions as to what amounts to an unconstitutional confiscation of property by the action of the zoning board. If an owner affirmatively demonstrates that the zoning action deprives him of all reasonable beneficial use of his property, the action will be held unconstitutional, but the restriction upon the property imposed by the zoning action must be such that the property can not be used for any purpose to which it is reasonably adapted.

On the same evidence which was before the Board, the court below found that the applicant had met the heavy burden resting upon it of showing that the existing zoning classification, as applied to. Parcel B, operated as a constitutional confiscation of property. The facts were undisputed; it is the correctness of the conclusion of law which the judge reached upon these facts which is before us. While the judgment of a lower court on the evidence will not be set. aside unless clearly erroneous, that phase of. the rule is limited to the court's decision on the evidence. Maryland Rule 886. The conclusions of law based upon the facts are reviewable by this Court. *Space Aero v. Darling,* 238 Md. 93, 106, 208 A. 2d 74 (1965).

The testimony of Mr. Hall and his builder as to the physical problems involved in the use of Parcel B was confined almost entirely to the building of individual houses. Mr. Hall testified on cross-examination before the Board that he personally does not like group homes or semi-detached houses and had not given consideration to use of the property for these purposes. It is not the developer's desires with respect to the use of his property which are controlling on the issue of whether or not there is an unconstitutional taking; the question is whether the property can be used for any reasonable purpose. See *Mac-Donald v. County Board, supra,* at 556-57.

Mr. Klaus was of the opinion that the cost of erecting individual homes within the existing zoning classification would be prohibitive; his testimony was not supported by specific figures and other evidence to show the costs which would be involved. Unsupported claims of economic unfeasibility are not enough. *Pahl v. County Bd. of Appeals, supra,* at 297, and *DePaul v. Board, supra,* at 227-28.

The individual driveways referred to by Mr. Evans may well

be desirable but the testimony does not show they are essential for homes other than cottages permitted by the existing zoning.

We find that the applicant has not sustained the burden which the law imposes on it to show that the Board's action precludes it from using Parcel B for any purpose for which it is reasonably adapted.

> *Order affirmed insofar as it affirms the decision of the Board of Appeals as to Parcel A, and reversed, insofar as it reverses the Board's decision as to Parcel B; case remanded for the passage of an order affirming the Board's decision as to both parcels; the appellee and cross-appellant to pay the costs in this Court and below.*

BARNES, J., filed the following concurring opinion.

I concur in the result reached by the Court. It is, however, a reluctant concurrence as I would have granted the application of the property owner for the reclassification of Parcels A and B had I been acting as the Board. But judicial opinion in regard to the weight of the evidence cannot be substituted for that of the Board in this essentially legislative determination if there is sufficient credible evidence before the Board to make the issues of fact "fairly debatable." If the issues are "fairly debatable" it cannot be held by the courts that the action of the Board is arbitrary, unreasonable or capricious. In my opinion this is the true test and not whether there has been a "mistake in original zoning" or "a substantial change in physical conditions in the neighborhood" as the *exclusive test* to determine the validity of the re-zoning of land by the Board or the refusal of the Board to rezone. I have heretofore rather fully given my views on the Maryland—"mistake-change in physical conditions"—Rule in my dissenting opinion in *MacDonald v. County Board,* 238 Md. 549, 576-601, 210 A. 2d 325, 340-354 (1965), and I adhere to those views.

As is pointed out in the Court's opinion, the Board might

lawfully have granted the requested reclassification and such action could not have been successfully challenged in the courts. The Board, however, declined to grant the requested reclassification and I cannot say from the evidence before it that a reasonable man could not have reached that conclusion even though, as I have indicated, I would have reached a different result. These facts have been set out in the Court's opinion and need not be repeated here.

The question of whether the existing R-6 zoning is unconstitutional as applied to Parcel B is, in my opinion, a close one. In presenting this issue to the Circuit Court on appeal from the Board the property owner had the burden of showing by the evidence that the property owner of the land in question is deprived of all reasonable beneficial use of his property under the applicable existing zoning ordinance. In the case at bar, I think the applicant did establish from the evidence that Parcel B may not be used for the erection and sale of individual homes.

I do not agree with the implication in the Court's opinion that an expert witness need necessarily give specific figures to show the costs involved, if he is qualified by his experience and background to testify to the ultimate conclusion of fact as was Mr. Klaus in this case. Specific figures may be sought by cross-examination if the expert's conclusion is thought by the opposing party to be unsound, but in the absence of this, the conclusion of fact is prima facie correct. In *Frankel v. City of Baltimore,* 223 Md. 97, 162 A. 2d 447 (1960), the expert witnesses for the property owner gave no specific cost figures in their testimony that under the applicable zoning regulations in that case the property owner would be deprived of all reasonable use of his property. One witness, an experienced real estate expert and developer testified that it would be "economic suicide" to attempt to build the permitted buildings. The trial court in *Frankel,* in affirming the Board, accepted the testimony of an expert witness for the City of Baltimore *who did give estimated cost figures* and who testified that it was economically feasible to erect individual dwellings. We reversed and held that the testimony of the experts for the property owner (who gave no specific cost figures) was confirmed by the uncontrovertible physical facts and held that the existing zoning regulations did

deprive the property owner of all reasonable use of his property and resulted in an unconstitutional taking of his property without just compensation. The lack of specific cost data may go to the *weight* of the expert's testimony. But this is for the trier of facts to evaluate and Judge Menchine, in this case, apparently accepted and relied upon the testimony of Mr. Klaus. *Pahl v. County Board of Appeals,* 237 Md. 294, and *DePaul v. Board,* 237 Md. 221 do not purport to overrule the *Frankel* case on this point and, in my opinion, the *dicta* in *Pahl* and *DePaul* referred to in the Court's opinion in the case at bar, are consistent with the position that the lack of cost data goes to the weight the trier of fact will give testimony of the expert, rather than to its admissibility and prima facie correctness.

The burden, however, was upon the applicant to establish that Parcel B could not reasonably be used for any of the uses permitted in an R-6 zone. Among the permitted uses are semi-detached houses. As the Court points out in its opinion, the testimony of both Mr. Hall and Mr. Evans was confined almost entirely to the erection of individual homes, and Mr. Hall indicated on cross-examination that consideration had not been given to the use of Parcel B for semi-detached houses. The substance of the testimony of Mr. Klaus was also directed principally at the economic feasibility of erecting individual homes. His attention was not directed to the possible erection of semi-detached houses on Parcel B. In the light of this testimony and other testimony in the case, I concur in the Court's opinion that the applicant did not meet the burden of showing that it is deprived by the existing R-6 zoning regulations of *all* reasonable beneficial use of Parcel B, and that an unconstitutional taking of its property without just compensation has occurred.