## SUBURBAN PROPERTIES, INC. *v.* MAYOR AND COUNCIL OF ROCKVILLE

[No. 401, September Term, 1964.]

2

*Decided December 17, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*James R. Miller, Jr.,* with whom were *Earl C. Hill, Jr.* and *Miller, Miller & Canby* on the brief, for appellant.

*George W. Shadoan* for appellee.

OPPENHEIMER, J., delivered the majority opinion of the Court. Dissenting opinion by HAMMOND, J., at page 9, *infra.*

Suburban Properties, Inc. (Suburban) appeals from an order of the Circuit Court for Montgomery County dismissing Suburban's bill of complaint to vacate an action of the Mayor and Council of Rockville (the Council) denying Suburban's application for a zoning reclassification of property from the R-60 single family residential zone to the I-2 light industrial zone or the I-1 service industrial zone under Rockville's zoning ordinance.

The property in question consists of three contiguous lots with a total area of about 48,500 square feet. The northern boundary of the property is conterminous with Rockville's northwestern boundary adjoining the intersection of Ashley Avenue with Stonestreet Avenue. The area to the north of the Rockville city limits is zoned I-1 industrial; there is a radio tower and transmitting station immediately north of the property here involved. The property's western boundary line abuts

the main line of the Baltimore and Ohio Railroad; the area across the railroad track to the west is zoned for commercial and industrial use. On the east, the property has 150 feet frontage facing Stonestreet Avenue, with a depth of approximately 300 feet. The areas to the east and south of the property are zoned residential, with the exception of one industrial enclave at the intersection of Frederick and Stonestreet Avenues. These residential areas are improved by homes, some of which, at the time of the hearing before the Council, were substandard.

In 1957, the Rockville Planning Commission in a proposed master plan for the Stonestreet Avenue area recommended that the property here involved be put in an industrial zone. However, when the master plan was adopted in September 1960, the 1957 proposal was rejected and the city zoned the area in question R-60 residential.

Suburban's application requesting the reclassification of the property was filed in 1961, less than a year after the adoption of the 1960 master plan. The city Planning Commission unanimously recommended dismissal of the application and recommended that the 1960 plan be upheld. The Commission found, *inter alia*, that the indications were the area would develop residentially, that any change in the zoning in the area should be part of a comprehensive change reflecting changing character and need, and that the existence of more than 100 acres of industrially zoned land in the vicinity was sufficient to satisfy the public need.

The Council held a hearing on the application on August 21, 1961. Suburban presented testimony that there was need for additional industrially zoned property in Rockville; Suburban's president, Mr. England, testified that because the logical zoning was industrial it was unreasonable to spend money to improve the property for residential use. Suburban offered no expert testimony at the hearing but subsequently, within the grace period of ten days permitted by local zoning procedure, submitted for the records letters from a realtor, a land planner and a banker. The land planner's report of his examination of the property was also submitted. The realtor was of the opinion that the property should be zoned industrial; the land planner believed the application to be reasonable and meritorious. Each gave reasons to support his opinion. The banker, the president

4

of a Montgomery County bank, stated that the property had been inspected and "[w]e regret that this property, due to its proximity to the B and O Railroad tracks and the adjoining industrial property, does not meet our requirements for eligibility for conventional home loans." Each of the letters was dated after the date of the hearing.

At the hearing, residents of the area testified that houses in the vicinity of the property were well maintained. One of the residents testified that a loan had been obtained and a house built within the last two months on Stonestreet Avenue. Another resident stated that he did not know of anyone who wanted to build a house on that street who had been refused a loan. Suburban's president testified that the company had built a house which did not have a bathroom or modern heating plant, hoping and expecting that it would be able to use the property for industrial purposes. The tenants had been put out because the Rockville inspectors, after inspection, had told the president, Mr. England, that, unless a modern heating plant and kitchen and a satisfactory bathroom were installed, the tenants would have to be ejected.

On October 9, 1961, the Council adopted a resolution denying Suburban's application. On March 21, 1962, Suburban filed a bill of complaint for a declaratory judgment and injunction in the Circuit Court for Montgomery County asking that the Council's action denying the application be vacated and set aside. As we noted in *England v. Rockville*, 230 Md. 43, 185 A. 2d 378 (1962), the Rockville ordinance does not provide any remedy by way of appeal and accordingly the bill in equity was a proper remedy for a review of the Council's action.

The hearing in the court below did not take place until September 1, 1964, almost three years after the action of the Council. At the court hearing, Suburban contended, as it contends here, that the Council's action in denying its application was unreasonable and arbitrary and that it was unconstitutional because it denied Suburban any reasonable use of its property. The Chancellor admitted, over Suburban's objection, additional testimony of Mr. William Hussmann, Rockville's Planning Director, to substantiate the findings of the Council. Mr. Hussmann testified, *inter alia,* as to the building of additional residences between the date of the Council's resolution and the

court hearing. At the conclusion of the hearing, the Chancellor said that, while he thought he was familiar with the property, he would take a look at it; no objection was made to his doing so. In his opinion, the Chancellor stated that the east side of Stonestreet Avenue, from the south side of Ashley, "are all now improved properties with single family residence dwellings, in the main being attractive low-income homes." The Chancellor observed that there was only one vacant house in the area and that most of the homes had modern plumbing facilities. He found that there was no mistake in the original zoning, that the denial of the application was not confiscatory, that he could not say the action of the Council was arbitrary or capricious, and that, because the evidence presented a clearly debatable issue, the court could not substitute its judgment for that of the Council.

Suburban contends that the Chancellor erred when he admitted, over objection, the testimony of Mr. Hussmann as to the developments since the date of the Council's resolution and that the Chancellor should not have viewed the property. It argues that the Chancellor's reliance in his opinion upon the developments since the date of the Council's resolution vitiated his findings. We agree that there was prejudicial error in the admission of testimony, over objection, as to events or changes in circumstances occurring after the hearing before the Council.

In *Board of County Comm'rs for Prince George's County v. Meltzer,* 239 Md. 144, 210 A. 2d 505 (1965), while a petition for review of the denial by the Council of an application for reclassification of a parcel of land was pending in the Circuit Court for Prince George's County, the parties had stipulated that, after the Council's action, the Park and Planning Commission had adopted a master plan which affected the property involved. We held that this procedure was improper although, under the circumstances, a remand was not required. As to the error in the acceptance of the stipulation, Chief Judge Prescott said, for the Court:

"This meant that the court heard the case upon facts differing from those presented to the Council. We know of no authority for such procedure; on the contrary, Section 59-85 (g) of the County Code provides that after appeal, upon a proper showing that addi-

tional and material evidence should be taken, the case shall be remanded to the Council for the taking of such evidence by it. After taking the evidence, the Council may modify or reverse its previous findings, and shall then file such additional evidence, together with its 'modifications or new findings or decision,' with the reviewing court. This procedure maintains in the Council its authority and function to zone and rezone as anticipated by the zoning legislation, and, at the same time, also maintains the statutory authority of the courts to review the Council's action. If counsel were permitted to add additional facts by stipulation or the court allowed to supplement the facts adduced before the Council by taking additional testimony, it would mean in such instances that the courts, and not the Council, were, in fact and in reality, zoning and rezoning, duties which we have so repeatedly said should not be performed by the courts that the statement has become trite." 239 Md. at 156.

See also *Bishop v. Board of County Comm'rs of Prince George's County,* 230 Md. 494, 501, 187 A. 2d 851 (1963) and cases therein cited.

The improper admission of the testimony as to developments subsequent to the hearing before the Council presents two alternatives as to the disposition of this appeal. Had the Chancellor confined himself to a review of the testimony before the Council, the questions would have been ones of law and if he had held the Council's action to be arbitrary or capricious or an unconstitutional taking of property, his findings would not have been entitled to the presumption of correctness which attaches to findings of fact. *Mayor and City Council of Baltimore v. Borinsky,* 239 Md. 611, 622, 212 A. 2d 508 (1965) ; *Pallace v. Inter City Land Co.,* 239 Md. 549, 212 A. 2d 262 (1965). We could, therefore, decide the case on the basis of the testimony before the Council. The alternative is to remand the case for further proceedings under Maryland Rule 871 a.

There are strong reasons for making final disposition of a case at the earliest time consonant with justice to the parties. Orderly judicial administration looks to final disposition of litigation, upon adjudication of the issues raised on appeal. This

consideration of public policy is particularly relevant in zoning cases, where, in the nature of the subject matter, changes in circumstances are constantly occurring, or claimed to be occurring, and where, except under unusual circumstances, a remand for further proceedings would tend to encourage similar although unwarranted requests in the spate of litigation in this field with which our courts are confronted.

We believe, however, that in this case, there are unusual circumstances which make the invocation of the Rule appropriate. First, there is the extraordinary lapse of time, over three years, between the hearing before the Council and the proceedings in the court below. A delay of this extent (for which reasons were given in oral argument) tends to make court review, in a field as volatile as zoning, unrealistic.

Second, under the procedure permitted by the Council on applications for rezoning, the letter and report from Suburban's expert witness, Mr. Tuemmler, and the letters from the realtor and banker were submitted by Suburban after the Council's hearing and were made part of the record. The letter from the realtor was dated August 29, 1961, seven days after the hearing; the record does not show when it was filed. At the hearing in the lower court, it was stated by the Council's attorney, without contradiction, that Mr. Tuemmler's report was filed on the last of the ten days permitted. Mr. Tuemmler, the realtor, and the banker had not testified at the hearing. There was insufficient opportunity for the City of Rockville or the private opponents of Suburban's application to offer testimony to rebut the evidence submitted by the realtor after the hearing. As to the letter and report of Mr. Tuemmler, there was no opportunity.

While the Council denied the application, were we to decide the case at this time, the Council and the persons who opposed the rezoning might be prejudiced because the letters and report filed after the hearing would be part of the record before us, without any testimony in contradiction or explanation thereof by the opposing parties.

Under these unusual circumstances, we believe that the substantial merits of the case will not be determined by affirming, reversing or modifying the judgment from which the appeal was

taken, and that the purposes of justice will be advanced by permitting further proceedings. We are of the opinion that the further proceedings should be by way of remand from the lower court to the Council, where additional evidence may be adduced by any party, and where the matter can be determined, at least in the first instance, by the body charged with responsibility in zoning, in the light of the circumstances as they exist at the time of the new hearing.

Without limiting the scope of such additional testimony, the Council and opponents of the proposed rezoning will be afforded the opportunity of offering the testimony of Mr. Hussmann, Director of Planning for the City of Rockville, which we have held was improperly admitted in the judicial hearing below. Suburban may offer any additional evidence it may have to support its contention that changes in conditions in the area make the continuation of the present zoning classification of the property involved arbitrary and capricious. The opponents of the application will have the right to offer testimony to rebut the evidence submitted after the Council hearing on August 21, 1961. Suburban will have the opportunity to endeavor to show that, as it contends, denial of its application would be an unconstitutional taking of its property, by the specific, factual evidence to which we referred in *Borinsky* and the cases therein discussed.

Much of the testimony in the present record relates to the present master plan of the City of Rockville Planning Commission and a former plan proposed by the Commission but rejected. As we pointed out in *Board of County Comm'rs for Prince George's County v. Edmonds,* 240 Md. 680, 215 A. 2d 209, a master plan of an advisory body such as the Commission may be a valuable guide to the legislative body charged with the responsibility for zoning, but it is only a factor to be considered in that body's decision, unless there is a legislative enactment to the contrary. Rockville has a zoning map which was offered in evidence, but additional testimony may shed light on whether the adoption of that map constituted comprehensive zoning, its extent and the date of its adoption. If there have been any annexations to the City in this area since the adoption of the map, the nature thereof and the present zoning

classifications therein may be helpful. These references to sectors of possible additional testimony are only illustrative, and not by way of exclusion. Nothing in this opinion is to be construed as an inference that we think the Council's action was unwise or unsound.

> *Case remanded, without affirmance or reversal, for remand by the Circuit Court for Montgomery County to the Mayor and Council of Rockville for the introduction of additional evidence or otherwise, consistent with the views expressed in this opinion; costs to abide the result.*

HAMMOND, J., filed the following dissenting opinion.

I am constrained to dissent because there was ample evidence before the Council in 1961 to support its decision to draw the zoning line so as to include the property involved as part of neighboring residential land rather than as a part of neighboring industrial land. The record sustains the finding of the Chancellor that the question before the Council in 1961 had been fairly debatable, that the property owner could make a reasonable, as distinguished from highly profitable, residential use of the property, and that the Council's action was not arbitrary, capricious or illegal.

Since the record sustains these findings of the Chancellor, the only function of this Court in the zoning process is to affirm. The facts that evidence favorable to the property owner was improperly received by the Council, or that development in the area between 1961 and 1964 actually had been residential and so supported the view the Council took in 1961, or that the Chancellor saw the area and this development for himself (without objection) did not and could not make improper or illegal what the Council did in 1961. Proper and competent evidence in 1961 permitted the Council to make the choice it did; its wisdom or soundness is not for us to pass on. I think the remand inevitably will suggest that the Court, despite its dis-

claimer thinks the Council's action was unwise and unsound and that it should reconsider, and I feel that the making of such a suggestion certainly should not be and, properly or permissibly is not, part of the judicial function in zoning cases.