## ANNE ARUNDEL COUNTY, MARYLAND *v.* MARAGOUSIS ET UX.

[No. 184, September Term, 1972.]

*Decided February 8, 1973.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*John M. Court, Assistant County Solicitor,* with whom was *Paul F. Borden, County Solicitor,* on the brief, for appellant.

*Russell R. Reno, Jr.,* with whom were *Robert A. Dietz, John M. Ebersberger, Jr.,* and *Darrell L. Henry* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In 1964, Steve Maragousis and Maria Maragousis, his wife (the Maragousises) purchased, for $25,000.00, an unimproved tract containing 3.191 acres in the First Assessment District of Anne Arundel County (the County). At the time the Maragousises bought the property, about one acre, abutting the southwest quadrant of the intersection of Maryland Routes 2 and 214, was zoned Heavy Commercial; the remainder, Agricultural. In a comprehensive rezoning of the First District by Bill 88-71 adopted by the County Council on 30 December 1971, the Maragousises' property was reclassified as Deferred Development District.

The Maragousises, believing themselves aggrieved by the action of the County Council, sought declaratory relief in the Circuit Court for Anne Arundel County.[1] From a decree declaring §§ 13-320 through 13-320.4 of Article VI of the County's zoning regulations unconstitutional as applied to the Maragousises' property, the County has appealed.

Anne Arundel County Code (1967, as supplemented) Art. VI, § 13-320, described the underlying purpose of the Deferred Development District classification:

> "Deferred development districts shall allow for orderly development in accordance with the general development plan by preventing premature piecemeal development that is non-comprehensive in nature, and is detrimental to the economic viability of the county. Said districts shall allow for (a) the continuance of ex-

---

1. The Maragousises' expert witness testified that the value of the tract dropped from $70,000.00 to $6,380.00 as a consequence of the rezoning; Mr. Maragousis thought the value had dropped from $80,000.00 to $3,000.00 or $4,000.00.

isting uses in areas where increased development should be deferred, (b) areas which are essentially rural in character, and (c) areas which, although designed for development in the general development plan, lack the essential public services for comprehensive development and are in need of more detailed study."

This was followed by §§ 13-320.1 through 13-320.4 which contain an enumeration of permitted uses, including those permitted by special exception, and area and setback requirements:

"Section 13-320.1. Uses permitted.

    (a) The following uses shall be permitted in DD—Deferred Development Districts:

        (1) Auction establishments (temporary uses only).

        (2) Farming.

        (3) Single family detached residences.

        (4) Public recreational structures and uses.

        (5) Temporary stables.

        (6) Temporary stands for sale of produce raised on the premises.

    (b) All uses proposed for areas having a water table of less than five feet (5′) below surface must be approved by the Anne Arundel County Health Department.

"Section 13-320.2. Special exceptions.

    (a) The following special exceptions shall be permitted in DD—Deferred Development Districts:

        (1) Amusement enterprises not including any permanent structures.

    (2) Outdoor drive-in theatres.

    (3) Public utilities and uses.

    (4) Sand and gravel operations.

(b) The following uses shall be permitted as special exceptions in Deferred Development Districts only in accordance with the conditions hereinafter set forth (in addition to other provisions of this heading and article XI of this Subtitle) . . . ."

\* \* \*

[There follow provisions, which have been omitted, respecting the granting of special exceptions for planned development of tracts of 100 acres or more for residential or industrial purposes and for planned commercial complexes of from 10 to 25 acres.]

"Section 13-320.3. Area requirements.

Each principal structure together with its accessory structures and uses shall be located on a lot having a net area of not less than five (5) acres. Not more than five percent (5%) of the net area of any lot shall be covered by the principal structure, accessory structures and uses.

"Section 13-320.4. Setback requirements.

No structure shall be located less than fifty feet (50') from a lot line . . . ."

What disturbed the chancellor was the five-acre minimum lot requirement of § 13-302.3. He found, and we agree, that a literal reading of this section would deprive the owner of a three-acre parcel of any reasonable use of his property,[2] which amounts to an unconstitutional taking without compensation, *Spaid v. Board of County Comm'rs*, 259 Md. 369, 387-88, 269 A. 2d 797

---

2. It would appear that farming would be the only use permitted the Maragousises by Bill 88-71.

(1970) ; *Poe v. Baltimore City,* 241 Md. 303, 306-07, 216 A. 2d 707 (1966) ; *Mayor and Council of Rockville v. Cotler,* 230 Md. 335, 340, 187 A. 2d 94 (1963) ; *Frankel v. City of Baltimore,* 223 Md. 97, 103-04, 162 A. 2d 447 (1960), *and see Kracke v. Weinberg,* 197 Md. 339, 347, 79 A. 2d 387 (1951).

However, after the case had been tried below, and after this appeal had been entered, § 13-320.1 and § 13-320.3 were amended by Bill 159-72, which by its terms, took effect on 12 January 1973, four days before the case came before us. As amended, § 13-320.1 now reads:

> "(a) The following uses shall be permitted in DD—Deferred Development Districts:
>
> > (1) Auction establishments (temporary uses only).
> >
> > (2) All uses set forth in Section 13-303.1 of this Subtitle."

Section 13-320.3 was expanded by the addition of a new Subsection (b) :

> "(a) Each principal structure together with its accessory structures and uses shall be located on a lot having a net area of not less than five (5) acres. Not more than five percent (5%) of the net area of any lot shall be covered by the principal structure, accessory structures and uses.
>
> "(b) Notwithstanding the minimum lot requirements of this heading, a residential dwelling may be constructed on any separate parcel of property legally recorded prior to the effective date of this Subtitle, provided all other requirements of this Subtitle are met."

The uses permitted by § 13-303.1, incorporated by reference, are those permitted in R A Districts:

"Sec. 13-303.1. Uses permitted.

(a) The following uses shall be permitted in RA—Agricultural Residential Districts:

(1) Accessory buildings and uses.

(2) Animal husbandry.

(3) [Repealed]

(4) Churches and ancillary uses (minimum site of two (2) acres).

(5) Cluster development, in accordance with the provisions of sections 13-307 through 13-307.7, inclusive.

(6) Dairies.

(7) Dwellings, one-family detached.

(8) Farm tenant houses.

(9) Farming.

(10) Fish and game hatcheries.

(11) Forestry.

(12) Fur farming (not less than fifty feet (50′) from any lot line).

(13) Golf courses.

(13A) Home occupations.

(14) Nursery farms (greenhouses).

(15) Off-street parking, in accordance with the provisions of article VIII.

(16) Private camps, for seasonal residence only.

(17) Public parks, playgrounds, and other recreational areas.

(18) Roadside stands (temporary seasonal structures selling only the produce grown on the premises).

(19) Sale of Christmas trees (between December 5 and December 25).

(20) Signs, in accordance with the provisions of article IX.

(21) Swimming pools, community.

(22) Swimming pools, private, in accordance with the provisions of section 13-300.7 (d) (11).

(23) Wildlife preserves.

(24) Unenclosed storage of manure or odor or dust-producing substances or uses (not less than ten (10) acres).

(b) The following uses shall be permitted only in accordance with the conditions hereinafter set forth (in addition to the other provisions of this heading):

(1) Country clubs, private clubs and service organizations, provided:

(i) All buildings shall have a setback of not less than one hundred feet (100') from any lot line.

(ii) Maximum coverage for all buildings (including off-street parking), located on the site shall be sixty percent (60%).

(iii) Required off-street parking shall not be located in any required setback area.

(2) Private educational institutions and bona fide, non-profit eleemosynary and philanthropic organizations or institutions conforming with the provisions of subsections (b) (1) (i), (ii) and (iii) of this section.

(3) Hospitals, sanitoriums and nursing homes, provided:

(i) Hospitals shall be situated on a site not less than two (2) acres, plus one (1) acre for each group of twenty-five (25) beds (or fraction thereof) exceeding fifty (50) beds.

(ii) Sanitoriums and nursing homes shall have a minimum site of five (5) acres plus one (1) acre for each group of twenty-five (25) beds (or fraction thereof) exceeding one hundred (100) beds.

(iii) Front, rear and side yards shall be not less than fifty feet (50') in width.

(iv) Buildings (or sections thereof) for

contagious, mental, drug or liquor addict cases shall be located not less than two hundred feet (200') from any lot line.

(v) Sources of potential nuisance (including laundry operations, power plants, restaurants or cafeterias, kitchens, ambulance or emergency patient entrances, unloading areas for supplies and food, garbage loading areas, incinerators and animal laboratories) shall be located not less than two hundred feet (200') from any residential zoning lot, and not less than fifty feet (50') from any street intersection.

(vi) Access drives shall be located not less than forty feet (40') from any residential zoning lot.

(vii) Buildings with staff resident facilities shall provide an additional five hundred (500) square feet of usable lot area for each site resident.

(viii) Voluntary hospitals or sanitorium establishments may be erected to a greater height than permitted in section 13-303.7; provided, that the front, side and rear yards shall be increased one foot (1') for each foot by which such building exceeds the applicable height limitation.

(4) [Repealed]

(5) Private residential piers and boathouses, in accordance with the provisions of section 13-300.16.

(6) Stables (commercial, community and riding clubs), provided:

(i) No stable shall be located on a tract of land less than two (2) acres, and there shall be one (1) additional acre for each horse kept in excess of two (2) horses but less than sixteen (16) horses. An additional one-quarter acre

shall be required for each horse over fifteen (15).

 (ii) No structure enclosing horses shall be located less than fifty feet (50′) from any nonresidential property, nor less than two hundred feet (200′) from any residential property line.

 (iii) Manure shall be stored not less than fifty feet (50′) from any property line, and not less than one hundred feet (100′) from any dwelling on adjacent property.

 (7) Theatres, legitimate (only outdoor and/or sheltered, provided all such uses shall be temporary with no permanent improvements) . . . ."

It has consistently been our policy to consider zoning cases on the state of the substantive law as it exists when the case is argued before us, *Dal Maso v. Board of County Comm'rs,* 264 Md. 691, 694, 288 A. 2d 119 (1972); *Mandel v. Board of County Comm'rs,* 238 Md. 208, 215, 208 A. 2d 710 (1965); *Yorkdale Corporation v. Powell,* 237 Md. 121, 124-28, 205 A. 2d 269 (1964),[3] and *compare Springloch Area Citizens Group v. Montgomery County Board of Appeals,* 252 Md. 717, 723, 251 A. 2d 357 (1969). The amendment of § 3-320.1 and of § 13-320.3 marked the opening of an entirely new ball game, because the uses permitted by § 3-303.1 were obviously much wider in scope.

In its reply brief, the County pointed out that § 13.-320.3 (b), added by Bill 159-72, had made it possible for the Maragousises to use their lot as a site for a residence. In argument before us, however, the County conceded that the definition of "lot" contained in § 13-300.2 (47) of the County Code,

 "[A] portion of a subdivision, or any other par-

---

**3.** A different rule is applicable to procedural changes, Luxmanor Citizens Ass'n, Inc. v. Burkart, 266 Md. 631, 644-45, 296 A. 2d 403 (1972).

cel of land (whether immediate or future), not
including multifamily development"

clearly did not encompass the Maragousises' tract, which
was not a *portion* of anything. As a consequence, the
County said, § 13-320.3, which reappeared as § 13-320.3
(a) in Bill 159-72, and required that each principal struc-
ture be located on "a lot having a net area of not less than
five (5) acres" does not apply to the Maragousises' land,
which now may be used for any of the uses permitted by
§ 13-303.1.

Since neither this concessum nor Bill 159-72 was be-
fore the lower court, the whole picture has been drasti-
cally altered. It may well be that the Maragousises are
no longer denied any reasonable use of the property. The
mere fact that they may be denied the use they had in
mind—a gasoline filling station—does not necessarily
mean that they have been denied due process. Our cases
have uniformly held that a restriction on use which re-
sults in economic loss to the landowner, absent his pos-
session of some vested right, is not necessarily an arbi-
trary, unreasonable and capricious exercise of the zon-
ing power, *Montgomery County v. Laughlin,* 255 Md. 724,
735, 259 A. 2d 293 (1969) ; *Helfrich v. Mongelli,* 248 Md.
498, 502-03, 237 A. 2d 454 (1968) ; *Tauber v. Mont-
gomery County,* 244 Md. 332, 337, 223 A. 2d 615 (1966) ;
*Baltimore City v. Borinsky,* 239 Md. 611, 622, 212 A. 2d
508 (1965) ; 1 Anderson, *American Law of Zoning* §§
2.21-2.23, 88-105 (1968).

Because of the change in circumstances resulting from
the enactment of Bill 159-72 as well as from the County's
concessum, we shall remand the case, without affirmance
or reversal, for reconsideration.

> *Case remanded for reconsid-
> eration in the light of the
> views h e r e i n expressed
> without affirmance or re-
> versal, costs to be paid by
> appellant.*